# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

## STATE OF MAINE

---

· WILLIAM McCARTHY, pro ami.

*vs.*

BANGOR AND AROOSTOOK R. R. CO.

Aroostook.   Opinion May 7, 1914.

*Contributory Negligence.   Damages.   Look and Listen.   Negligence.   Obstructed*
*View.   Plan.   Railroad Crossing.   Signals.*

1.   It is negligence per se for a person to cross a railroad track without first look-
ing and listening for a coming train.   And if one is injured at a railroad crossing
by a passing locomotive, which might have been seen, if he had looked, or heard,
if he had listened, he is guilty, presumptively of contributory negligence.

2.   In this case, the court is of opinion that the plaintiff, who was struck by the
defendant's locomotive at a crossing, was clearly guilty of contributory negli-
gence, and that the jury were not warranted by the evidence in finding the
contrary.

On motion by the defendant for a new trial.   Motion sustained.
New trial granted.

This is an action on the case in favor of William McCarthy, who
sues this action by next friend, against the defendant corporation to
recover damages for injuries received by him because of the alleged
negligence of the defendant.   The plaintiff, while crossing the
defendant's railroad track in Van Buren on September 29, 1910, was
struck by the locomotive of said defendant's train and received the
injuries complained of.

VOL. CXII 2

The defendant pleaded the general issue. The jury rendered a verdict for the plaintiff for ten thousand dollars, and the defendant filed a motion for a new trial.

The case is stated in the opinion.

*John R. Pelletier, and F. W. Halliday,* for plaintiff.

*P. C. Keegan, Powers & Archibald, and Stearns & Stearns,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

SAVAGE, C. J. The plaintiff, a boy of fourteen years, while driving a milk cart in the highway across the defendant's railroad was struck by the locomotive of a train and severely injured. In this action, in which he seeks to recover the damages sustained by him on account of the injuries, he counts on the defendant's negligence in the following particulars only; that the train was "driven negligently and carelessly by said defendant," that no whistle was blown before reaching the crossing; that the defendant was unmindful of its duties to the plaintiff, and that the defendant "was negligent, careless and unmindful of its duty in that it did not keep a careful lookout for such danger, that it did not use the care of a reasonable and prudent man under such circumstances." The verdict was for the plaintiff, and the case comes up on the defendant's motion for a new trial.

In argument the plaintiff contends that the defendant's servants upon the locomotive were negligent in not keeping a careful lookout when approaching the crossing, which is claimed to have been a blind and dangerous one, and that they did not sound the whistle and ring the bell while approaching the crossing as required by statute and by common prudence. Seven witnesses testified for the plaintiff, in effect, that the whistle was not blown and that the bell was not rung, four for the defendant to the contrary. Not to be on the lookout and not to blow the whistle and ring the bell in approaching a blind crossing is certainly negligence.

But it is unnecessary to analyze the testimony respecting the defendant's negligence even if we thought, as we do not, that the jury were justified in finding that the defendant's servants were negligent, and that their negligence was a cause of the collision, for we are

forced by the evidence to the conclusion that the plaintiff was guilty of contributory negligence, and that he cannot recover damages in any event.

In the first place, it is proper to observe that the plaintiff, though a boy, was an intelligent one, and his own testimony shows beyond question that he perfectly appreciated the danger, such as it was, of being run over at the crossing. He was engaged in driving a milk cart upon a milk route, and had been so engaged for nine months prior to the accident. And each day he had driven over this crossing twice. This case, and indeed his own evidence, show that he was perfectly familiar with all the surroundings of the crossing, and with the consequent dangers. He knew when he approached the crossing that it was about train time. He says he stopped his team twice before reaching the crossing to look and listen for the train. He says he saw nothing and heard nothing. One stopping place was about one hundred and fifty feet from the track, and the other was at a point about fifty feet from the track. The railroad for more than half a mile in the direction from which the train was coming was perfectly straight. But the plaintiff says he could not see the approaching train on account of trees and bushes growing on the right of way, and on account of a bank left in grading at the side of the highway. At this point the railroad passes through a cut, and the highway is graded down an incline to cross at grade. By reason of these obstructions to view the plaintiff says he could not, and that he did not, see the train until he actually was on the crossing, and that then the train was not more than fifty feet away. And another witness testified that a train could not be seen until one was on the crossing. The plaintiff contends that not only were there standing trees standing on the right of way, but that some of them leaned over towards the track, so low as to obstruct vision up and down the track. The defendant's right of way at this point was three hundred feet wide.

The defendant contends that the plaintiff had an unobstructed view of the railroad track when he was fifty feet from the track. There is much dispute about this. Assuming the crossing to be as blind and dangerous as the plaintiff describes it, there was all the greater need of watchfulness on the plaintiff's part. The more dangerous the crossing, the more need of care. At ordinary crossings a burden is put upon the traveler to be observant, to look and listen, and to stop, if need be. Much more at a blind crossing. The plain-

tiff, if his testimony is true, appreciated the necessity of watchfulness, even of stopping, for he says he stopped twice, with an interval of one hundred or one hundred and twenty-five feet.

Now if the plaintiff stopped last at a distance of twenty or even fifty feet from the track, and actually listened, it is, in the opinion of the court, incredible that he should not have heard the noise and roar of the onrushing train—a train coming as the plaintiff argues at the speed of sixty miles an hour, but more probably at a speed of thirty-five miles an hour. The train was then only a few hundred feet away. The track was straight. No climatic conditions are shown to have interfered with hearing. From the facts so far stated, it seems to us impossible that he should not have heard, if he stopped still and listened. And as he approached the track, the train came nearer, and inevitably the noise was louder.

But there is an additional fact. Following behind the plaintiff's milk cart, before the crossing was reached, was a two horse team hauling a jigger load of empty potato barrels. The driver was a boy. That boy left his own team trailing unguided behind and got into the milk cart with the plaintiff. Both boys testify that when the milk team was stopped the last time before reaching the crossing, the two horse team passed by them. They both testify that while riding together they were talking. Whether the boys were intent upon their conversation, so that they did not hear the coming train, or whether there was a rattle of empty potato barrels so that they could not hear, the case does not disclose. These are suggestions merely of what may account for their not hearing. But true it is that they passed on, both of them apparently oblivious of the danger, until they got onto the crossing. Under the existing conditions, if the plaintiff did not listen with ear and mind both he was negligent. If he listened, but was prevented from hearing the train by the rattling of the barrels or any other noises, there was all the more need of making certain before attempting the crossing. If, contrary to his testimony, he did hear, but attempted to make the crossing before the train, in such a place as he describes this to be, he was negligent. We think the case shows beyond question that if the plaintiff had looked just before the horse went onto the crossing, he would have seen the train where it then was. The defendant contends that he could have seen it when three rods back. We think the necessary conclusion is that he did not listen or that

listening, he did not hear the train because of other noises, which under the circumstances required further watchfulness, or that he did hear, and took the chances of crossing.

We do not forget that the plaintiff and his boy companion each testified that he did listen, and did not hear the train. We think the story is not credible, except upon the contingency of preventing noises, of which there is no evidence. An inherently incredible story is not made credible by being sworn to. Nor can it be allowed to serve as the foundation of a verdict. *Blumenthal* v. *Boston & Maine R. R.,* 97 Maine, 255.

Before leaving this branch of the case, we will add that a plan and photographs were used at the trial and are before us. If they correctly show the situation at the time of the accident, they demonstrate that the plaintiff could have seen the train when he was fifty feet from the crossing if he had looked. It is admitted that some trees had been cut on some part of the right of way, and some gravel had been moved, between the time of the accident and the time when the plan was made and photographs taken.

The plaintiff contends that these changes materially altered the appearance of the locality, as to ability to see the train. This was controverted. Although we are strongly impressed with the belief that the plaintiff could have seen the train at some distance from the track, yet inasmuch as there had been some change before the plan and photographs were made, we do not base our conclusion upon the failure of the plaintiff to see the train before he reached a point a few feet from the track. In any event, as we have already said, there was a point where if he had looked, he could have seen the train and stopped his team, before he entered upon the track.

We have not overlooked the plaintiff's contention that when, as assumed, the usual signals are not given, a traveler will not be held to that degree of negligence that he would had the company discharged its duty. *Romeo* v. *Boston & Maine R. R.,* 87 Maine, 540. It is unquestionably true that the traveler has a right to expect the company to give the usual signals, and may take into consideration to some extent the absence of signals, but such want of signals does not relieve the traveler of all care. *State* v. *Boston & Maine R. R.,* 81 Maine, 267; *Romeo* v. *Boston & Maine R. R.,* 87 Maine, 540. Not to listen, or having listened and heard, to attempt to cross a blind crossing without seeing, where the plaintiff says a train could not

be seen until the traveler. was on the. track, is clearly a want of requisite care, even if it be true that no crossing signals were given.

The law is well settled. And we add for .illustration various expressions. of the Justices of this court, respecting the duties of travelers. at railroad crossings. "The rule is now firmly established in this state, as .well as by courts generally, that it.is negligence per se for a person to cross a railroad track without first looking and listening for a coming train. If his view is unobstructed he may have no occasion to listen. But if his view is obstructed, then it is his duty to listen, and to listen carefully. And if one is injured at a railroad.crossing by a passing train or locomotive, which might have been seen if he had looked, or heard if he had listened, presumptively he is guilty of .contributory negligence." *Chase* v. *M. C. R. R. Co.*, 78. Maine, 346; *State* v. *M. C. R. R. Co.*, .76 Maine, 357. "It is not enough to establish negligence and an accident. It must be shown that the negligence was the cause. of the accident.. An omission to ring the bell or sound the whistle could not have been the cause of the accident if the deceased had notice. of the approach of the train by other means. Our belief is that the deceased did have such notice; that he could not have been so unobservant as to neither see nor hear the approach of that train; and, consequently, that the alleged negligence in omitting to ring the bell or sound the whistle could not have been the cause of the accident. But if he did not have such notice; if he drove onto .that crossing in total ignorance of the approach of that train; then the conclusion seems to us inevitable that he must have been exceedingly negligent in the use of his eyes and his ears." *State* v. *M. C. R. R. Co.*, 76 Maine, 357. "It is almost incredible that if they had listened carefully they could not have heard the rumbling and jolting of the approaching cars which so many others distinctly heard. If the noise of their carriage and of the pattering rain on the top rendered it difficult to distinguish the sounds, it was their plain duty to stop the. team and obtain a better opportunity to hear. No reasonably prudent man under such circumstances would have neglected to do so." *Smith* v. *M. C. R. R. Co.*, 87 Maine, 339. "If the traveler be alert and watchful for the passing train he can usually check his own speed quickly enough to avoid. a collision. The obvious peril of collision at such crossings requires that .the traveler upon the common road, when approaching a railroad crossing should exercise a degree of care commensurate with the peril. He

should bear in mind that he is approaching a crossing and that a train or locomotive at the same time may be approaching the same crossing at great speed. He should never assume that the railroad track or crossing is clear. He should apprehend the danger, and use every reasonable precaution to ascertain surely whether a train or locomotive is near. He should when near, or at, the crossing, look and listen,—not simply with the physical eyes and ears, but with alert and intent mind,—that he may actually see or hear if a train or locomotive be approaching. He should not venture upon a track or crossing until it is made reasonably plain that he can go over without risk of collision." *Giberson* v. *B. & A. R. R. Co.*, 89 Maine, 337. The traveler "must, therefore, to comply with his duty to exercise ordinary care, be on the alert to ascertain by the use of his senses of sight and hearing, and by other appropriate means, the approach of trains, and to seasonably avoid collision with them. He can usually avoid collision readily, easily and promptly, if he be properly careful and alert while approaching the crossing." *Day* v. *M. & M. R. R.*, 96 Maine, 207.

In view of the principles, of which the foregoing cases are illustrations, and applying them to the facts in this case, it is clear that the plaintiff was guilty of contributory negligence in attempting to cross the track as he did. And this being so, he was not entitled in law to a verdict in his favor. It must be set aside.

*Motion sustained.*