## Farley *v.* Ventresco, Appellant.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Herman & Harris,* for appellant.

*N. S. Winnet,* and with him *Arthur Soll* and *B. I. DeYoung,* for appellee.

OPINION BY GAWTHROP, J., November 16, 1931:

Plaintiff brought this action to recover for personal injuries and property damage sustained by him as the result of a collision of the automobile which he was driving with an automobile crane of the defendant which was parked on the side of Frankford Avenue, a city street. Frankford Avenue runs north and south and has a forty-four foot cartway with two lines of car tracks occupying the middle portion thereof. It is intersected by Cheltenham Avenue. There is a bend in Frankford Avenue north of Cheltenham Avenue, but from the south side of the latter avenue Frankford Avenue runs southwardly in a practically straight line, with a descending grade of one and one-half per cent.

On December 12th defendant's automobile crane was parked for the night along the west side of Frankford Avenue, facing in a northerly direction, at a point about one hundred feet south of Cheltenham Avenue. It was eight feet six inches in width, ten feet in length and higher than an ordinary automobile. The evidence for plaintiff, which we must accept as true, was that no red light or other warning was on the front of the crane. Shortly after midnight on the day mentioned plaintiff was driving a Chevrolet coach south on Frankford Avenue. The weather was clear and the streets were dry. When he reached the south side of Cheltenham Avenue, driving along the west rail of the south bound trolley track, he was travelling at a speed of from twenty-five to thirty miles an hour. He testified that the lights of other automobiles approaching from the south were shining in his eyes and temporarily blinded him, and that he drove on for what seemed to him more than one hundred and fifty feet, when his wife, who was seated beside him, screamed, and the crane loomed up in front of him and he "smashed into it," when he was still maintaining his speed of from twenty-five to thirty miles an hour; that his lights had been recently inspected and were in good condition; that when he first saw the crane he was "about five feet from it;" and that "the whole front of the car was smashed in" so that "it was not worth being repaired afterwards." One of his witnesses, who was driving behind him in another car at a distance of thirty or forty feet, testified that he saw plaintiff was going to hit the crane. Permitting the crane to stand on the street unprotected by lights or otherwise justified the finding by the jury that defendant was negligent.

It is contended in his behalf on this appeal that plaintiff's evidence convicts him of contributory negligence as a matter of law; that the only rational con-

clusion from his evidence is that, in continuing to drive his automobile at a rate of speed of at least twenty-five miles an hour for a distance of one hundred feet while he was blinded by headlights of other automobiles and until he was within five feet of the crane, when it was too late to stop and avoid striking it, he was negligent. We are compelled to adopt that view of the case. A driver of an automobile must keep in mind that an obstacle may appear in his path at any time and so drive his car as to be able to avoid it, under ordinary circumstances: Filer v. Filer, 301 Pa. 461. What would be a safe speed in daylight, or at night under ordinarily favorable conditions, may be very unsafe when the range of the driver's vision is limited. The Supreme Court and this court have steadfastly held that it is the duty of the driver of an automobile, when he is driving at night, to have his car under such control that he may stop or turn it away when objects intercepting his passage come within the range of his lights: Simrell v. Eschenbach, 303 Pa. 156; Mason v. Lavine, 302 Pa. 472, and Filer v. Filer, supra. See also Brink v. City of Scranton, 85 Pa. Superior Ct. 342, and McGrath v. P. R. R. Co., 71 Pa. Superior Ct. 1. Section 1002 of the Motor Vehicle Code of May 1, 1929, P. L. 905, provides that no person shall drive any vehicle upon a highway, "at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." Mr. Justice WALLING pertinently stated in the Simrell case that this "is the only safe rule, for it is possible obstructions may appear at any time in the traveller's path, as the result of accident or otherwise. If plaintiff could see an object as large as a truck for only twenty feet then he should have moderated his speed accordingly." In testing plaintiff's conduct in the light of what was decided in the above mentioned cases and the provision quoted from the statute,

how can it possibly be said that he was not negligent in driving his car at a speed of from twenty-five to thirty miles if he could not see the crane until he was within five feet of it. The only rational conclusion is that he either drove directly into the crane and failed to slacken his speed when he could not see objects which might appear in his path, or failed to turn aside if he could see the crane. His situation is no better than that of the plaintiff in Robinson v. Logan Township, 90 Pa. Superior Ct. 139, which was a case "where a view of the road being prevented by the blinding light of the other car, the plaintiff's driver took the chance of going on at a fairly rapid speed (fifteen to twenty miles an hour) without seeing where he was going." Of such driving Mr. Justice SCHAFFER pertinently observed in Wilhelm v. Sunbury & S. Ry. Co., 281 Pa. 69: "He could not proceed without having a sufficient view of the track in front of him to safeguard those who might be forced to use it, and it could not be said that he discharged his duty in this respect if he proceeded, although blinded by the lights of approaching automobiles; so advancing he was in no different position than he would have been had he gone on with his eyes shut." Plaintiff testified that he was "temporarily blinded." The extent and duration of the blindness may not have been such as to have made it his duty to stop, as in some circumstances may be necessary in the exercise of due care when a driver is blinded by lights. But his testimony leaves no doubt in our minds that in the circumstances as he described them it was his duty to reduce his speed and that his continuing to drive at a speed of twenty-five miles an hour until it was too late to avoid striking the crane was negligence. Under the conditions such speed cannot be determined to be the exercise of due care. Cupples v. Yearick, 99 Pa. Superior Ct. 269, upon which counsel for appellant rely as requiring the

submission of the question of plaintiff's contributory negligence to the jury, is readily distinguishable from the present case on its facts. All that we decided in that case is that under its facts the exercise of reasonable care by plaintiff did not require him to stop. But we said also that under some circumstances it may be necessary, in the exercise of due care, for a driver of an automobile to stop when blinded by lights of an approaching car.

The judgment is reversed and is here entered for the defendant non obstante veredicto.