DALLEY v. MID-WESTERN DAIRY PRODUCTS CO.
et al.

No. 5154.   Decided October 19, 1932.   (15 P. [2d] 309.)

*Shay & Shay,* of Cedar City, and *Willard Hanson,* of Salt Lake City, for appellant.

*Clark, Richards & Bowen,* of Salt Lake City, for respondents.

ELIAS HANSEN, J.

This is an action to recover damages for injuries sustained by plaintiff in a collision between his automobile and a truck owned by the defendant Mid-Western Dairy Products Company. Joseph N. Smith was made a party defendant because he is alleged to have been in charge of the truck at

the time complained of. At the conclusion of plaintiff's evidence defendants moved for a nonsuit. The motion was granted and the action dismissed. Plaintiff appeals and assigns as error the order granting the motion for a nonsuit and the judgment of dismissal. No other error is assigned.

The negligence charged in plaintiff's complaint is that on July 5, 1930, at about the hour of 12:30 a. m. defendants left a truck, without lights in front or rear, standing on the traveled portion of the Zion Park Highway, U. S. No. 91, in Iron county, Utah. The injuries concerning which plaintiff complains were sustained by him on account of his running into the truck while he was driving his automobile along the highway. As a defense to the action defendants charged plaintiff with contributory negligence. The motion for a nonsuit was upon the ground that plaintiff's evidence showed, as a matter of law, that at the time of his alleged injury he was either operating his automobile without lights as are prescribed by law, or he was not keeping a lookout ahead. According to plaintiff's testimony he received the injuries complained of in the manner and under the circumstances following: On the night of July 4, 1930, at about 10:30 p. m. plaintiff left St. George, Utah, for Cedar City, Utah; he drove a Ford coach, model A; he was alone in the car; he traveled on the main highway, the same being the Zion Park Highway, U. S. 91; his car was equipped with good lights and four-wheel brakes; the lights on the car would disclose ordinary objects about 200 feet ahead and would also disclose objects 10 feet to the side of the road at a distance of 100 feet ahead; the brakes on his car were in good condition; the highway over which he traveled was oiled; from Kanarra, Iron county, Utah, to Cedar City, Iron county, Utah, the highway runs north and south; the traveled portion of the highway was about 20 feet wide; it was smooth and level; about 1½ or 2 miles north of Kanarra he suddenly ran into a truck striking it in the rear on the left-hand side; he did not see the truck until he was within 15

or 20 feet from it; there were no lights on the rear of the truck and so far as he observed there were no lights on the front; as he approached the place where the truck was standing, he was keeping a constant lookout ahead; just before he struck the truck he was traveling on the right side of the road, the truck was on the right side of the road; when he first saw the truck he was traveling about 25 miles per hour; the lights of his car did not reveal the truck until he was within 15 or 20 feet from where it was standing; if the truck had been equipped with a lighted tail-light he would have been able to see the truck in time to stop or turn out; the truck was a stake body truck, painted yellow; he could not see the truck at a greater distance because it was painted yellow; part of the truck was standing on the east side of the traveled portion of the road; its rear end extended out about 5½ feet onto the oiled portion of the highway; no part of the truck extended to the middle of the oiled portion of the highway; the truck was facing northerly in the general direction that plaintiff was traveling; it was standing at an angle of about 20 degrees easterly from the north and south course of the highway; the road over which he was traveling was straight for a mile or more before he reached the place where the truck was standing, and it was also straight for a mile beyond where the truck was standing; there was nothing to obstruct his view; he met no one and no one passed him in the vicinity of where the truck was standing; the highway over which he was traveling was much frequented; he was aware that there may be persons walking or riding on horseback, or in horse-drawn vehicles along the highway; when he first saw the truck he applied his brakes and attempted to turn to the west or left side of the truck but was unable to do so; he had been driving an automobile almost daily for eleven years; he believed he could bring his car, traveling at the rate of 25 miles per hour, to a dead stop in a distance of 50 feet; if he had seen the truck 40 feet away he could have stopped his car or have so turned it as to avoid the collision; he was unable to stop

or turn his car so as to avoid the collison after he discovered the truck; he did not anticipate any truck would be parked on the highway; he did not know what happened after the collison because he was rendered unconscious. One of plaintiff's witnesses testified that on the night in question the moon was not shining; there was no wind; it was not cloudy; it was an ordinary summer night. Another witness testified that the stakes of the body of the truck in question were painted yellow, and the remainder of the body of the truck and the cab were painted red. Plaintiff was the only witness who testified concerning the cause of the collision. Evidence was received touching other phases of the case, but such other evidence does not give any light upon the question presented on this appeal.

It is upon the legal effect of substantially the foregoing evidence that the parties divide. Appellant contends that the question of the contributory negligence of plaintiff should have been submitted to the jury for its determination. Respondents urge that the evidence, viewed in the light of our statutory law as construed by this court, shows that plaintiff was, as a matter of law, guilty of contributory negligence which negligence on his part caused or contributed to the injury for which he seeks to recover in this action. No claim is made by respondents that the evidence is insufficient to support a finding that they were guilty of negligence at the time in question. Laws of Utah 1921, chap. 83, § 3976, p. 232, which was in effect at the time in question contains, among others, these provisions:

"Every motor vehicle * * * shall have mounted on the right and left sides of the front thereof a pair of lamps of approximately equal candle power. * * * If said vehicle can exceed a speed of fifteen miles per hour, then they shall have front lamps capable of furnishing light of sufficient candle power to render any substantial object clearly discernible on a level highway at least two hundred feet directly ahead and at the same time at least seven feet to the right of the axis of such vehicle for a distance of at least one hundred feet. * * *

"Every vehicle which shall use the highways of this state and at all times during the period from a half hour after sunset to a half hour before sunrise shall be equipped with a lamp or lamps, as herein

provided, of sufficient power and so adjusted and operated as to enable the operator of such vehicle to proceed with safety to himself and to other users of the highways under all ordinary conditions of highway and weather."

In this jurisdiction the doctrine is established "that it is negligence as matter of law for a person to drive an automobile upon a traveled public highway, used by vehicles and pedestrains, at such a rate of speed that said automobile cannot be stopped within the distance at which ∎ the operator of said car is able to see objects upon the highway in front of him." In the case of *Nikoleropoulos* v. *Ramsey,* 61 Utah 465, 214 P. 304, the language just quoted is said to be a correct statement of the law and that the refusal of the trial court to so instruct the jury was prejudicial error. In the case of *O'Brien* v. *Alston,* 61 Utah 368, 213 P. 791, 792, it is said:

"But entirely apart from any statutory requirements, the law requires that, if a person desires to operate his automobile on the public streets or highways after dark, he must see to it that it is equipped with proper, suitable, and sufficient lights, so that the operator may discover any objects or obstructions that may be encountered on the highway. The law in that regard is clearly and tersely stated in *Serfas* v. *Lehigh, etc., Ry. Co.,* 270 Pa. 306, 113 A. 370, 14 A. L. R. 791, where the court, in speaking of the duty of the operator of an automobile to have the same equipped with proper lights, said:

" '* * * It is the duty of a chaufeur traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision.'

"In the case of *Lawson* v. *Fond du Lac,* 141 Wis. 57, 123 N. W. 629, 135 Am. St. Rep. 30, 25 L. R. A. (N. S.) 40, the law is stated in the headnote as follows:

" 'Independent of any statute, it is negligence to run an automobile on a highway at night without sufficient lights to enable the driver to see objects ahead of him in time to avoid them.' "

In addition to the cases and authorities cited by this court in support of its position in the foregoing cases, the follow-

ing cases are to the same effect: *Spencer* v. *Taylor,* 219 Mich. 110, 188 N. W. 461; *Allison* v. *Chicago, etc., Ry. Co.,* 83 Wash. 591, 145 P. 608; *Knoxville Ry. & Light Co.* v. *Vangilder,* 132 Tenn. 487, 178 S. W. 1117, L. R. A. 1916A, 1111; *West Construction Co.* v. *White,* 130 Tenn. 520, 172 S. W. 301; *Jones* v. *Sunshine Grocery & Market Co.* (Tex. Civ. App.) 236 S. W. 614; *Solomon* v. *Duncan,* 194 Mo. App. 517, 185 S. W. 1141; *Albertson* v. *Ansbacher,* 102 Misc. 527, 169 N. Y. S. 188; *Serfas* v. *Lehi & N. E. R. Co.,* 270 Pa. 306, 113 A. 370, 14 A. L. R. 791; *Giles* v. *Ternes,* 93 Kan. 140, 143 P. 491; *Mailhot* v. *New York, New Haven & Hartford R. R. Co.,* 273 Mass. 277, 173 N. E. 422; *Welch* v. *Independent Coach Line,* 198 N. C. 130, 150 S. E. 717; *Weston* v. *Southern Ry. Co.,* 194 N. C. 210, 139 S. E. 237; *Yahnke* v. *Lange,* 168 Wis. 512, 170 N. W. 722; *Farley* v. *Ventresco,* 103 Pa. Super. Ct. 98, 157 A. 1.

Appellant has cited cases where, under facts similar to those involved in some of the foregoing cases, it is held that the question of contributory negligence should be submitted to the jury for its determination. *Baldwin* v. *City of Norwalk,* 96 Conn. 1, 112 A. 660; *Rozycki* v. *Yantic Grain & Products Co.,* 99 Conn. 711, 122 A. 717, 37 A. L. R. 582; *Sawdey* v. *R. W. Rasmussen Co.,* 107 Cal. App. 467, 290 P. 684. Other cases which lend support to the rule contended for by appellant are: *Ross* v. *Gearin,* 145 Okl. 66, 291 P. 534; *Grimes* v. *Richfield Oil Co.,* 106 Cal. App. 416, 289 P. 245; *Gilbert* v. *Solberg,* 157 Wash. 490, 289 P. 1003; *Hickerson* v. *Jossey,* 131 Or. 612, 282 P. 768, 769, 283 P. 1119.

What we conceive to be the weight of authority is in accord with the rule which prevails in this jurisdiction. The rule is also well established in this, in common with other jurisdictions, that where the evidence relied upon by the plaintiff to establish some material issue of his alleged cause of action is inherently impossible of being true in the light of facts which are established beyond controversy, then and in such case it becomes the duty of the court to take the cause from the jury and deny plain-

tiff the relief prayed. *Wilkinson* v. *Oregon Short Line R. Co.*, 35 Utah 110, 99 P. 466; *Oswald* v. *Utah Light & Ry. Co.*, 39 Utah 245, 117 P. 46; *Lawrence* v. *Denver & R. G. R. Co.*, 52 Utah 414, 174 P. 817; *O'Brien* v. *Alston,* supra; *McCarthy* v. *Bangor & Aroostook R. Co.*, 112 Me. 1, 90 A. 490, L. R. A. 1915B, 140. It will be noted that the statute heretofore quoted in this opinion imposes upon the plaintiff the duty of having his automobile equipped with "front lamps capable of furnishing light of sufficient candle power to render any substantial object clearly discernible on a level highway at least two hundred feet directly ahead and at the same time at least seven feet to the right of the axis of such vehicle for a distance of at least one hundred feet." A truck such as that into which plaintiff ran on the night in question is a substantial object. It was so held in the case of *Kakunis* v. *Ogden Rapid Transit Co.*, 63 Utah 4, 221 P. 853. As plaintiff approached the place where the truck was standing on the night in question, the highway was straight and level for a distance of at least a mile. The truck was directly in front of him and in his course of travel. According to his testimony he was keeping a constant lookout ahead. If he was not keeping a lookout ahead, he was guilty of negligence in failing to do so. There was nothing to obstruct his view. It was an ordinary, clear quiet summer night with no moon. So far as appears there was nothing to divert his attention from the road in front of him. He knew he was traveling upon a highway that was used by pedestrians, and persons traveling on horseback and in horse-drawn vehicles, none of whom are required to disclose a light to warn others of their presence upon the highway. In such case it must inevitably follow that plaintiff did not keep a lookout ahead, or, if he did, he either did not heed what he saw or he could not see the truck because his lights were not such as were prescribed by law. No matter which horn of the dilemma is taken, the result is the same, viz., plaintiff was negligent. Had plaintiff seen the truck 50 or more feet before he reached the place

where it was parked, he could, according to his testimony, have avoided the accident. It follows that his failure to discover the truck sooner was a proximate cause of the accident and resulting injury. The only reasons assigned by plaintiff for his failure to discover the truck sooner was because it was without lights and was painted yellow. The law imposed upon him the duty of having such lights as would enable him to discover objects without as well as those with lights. If his lights would not reveal unlighted objects at the prescribed distance, he was negligent. Some of his witnesses testified that part of the truck was painted red. The Legislature having prescribed that the front lights of an automobile in use upon public highways of this state shall be of sufficient candle power to render all substantial objects clearly discernible at a distance of 200 feet, it is not within the province of the courts to carve out an exception to the law because of the color of the object involved in a given case. The claim that an operator of an automobile should be excused from discovering a substantial object directly in front of him because it was painted yellow or yellow and red, finds no support in law and is, as we believe, without any foundation in fact.

The rule of law announced in the cases of *O'Brien* v. *Alston,* supra, and *Nikoleropoulos* v. *Ramsey,* supra, when applied to the evidence in this case, requires an affirmance of the judgment. Such is the order. Respondents are awarded their costs.

CHERRY, C. J., and FOLLAND, J., concur.

STRAUP, J.

I dissent. I think the question of contributory negligence was one of fact and ought to have been submitted to the jury. We all appreciate the variety of opinions expressed by courts as to when the question of negligence is one of law and when one of fact. By some courts, leanings or tendencies are indicated to resolve the question more and more one of law when the determination ought to be left to

the jury as one of fact, while other courts are prone to cast the duty and responsibility on the jury when the case is such as to require the determination by the court as a question of law. Sometimes it is said that when there is no dispute as to the facts, when there is no conflict in the evidence relating to or bearing on the subject of negligence, the question is one of law for the court. But that as applied to all cases, in view of the nature or character of particular facts though admitted and of the circumstances of the case, is putting the proposition too abstractly. The rule is well settled that the want of ordinary care constituting contributory negligence must be determined from the facts disclosed in each particular case and generally is a question of fact for the jury. 45 C. J. 1299. On page 1306 the author further says that where the evidence is such that different minds may reasonably draw different conclusions as to contributory negligence, the question is for the jury even though the different conclusions as to the acts constituting contributory negligence are based on undisputed facts. In 1 Sherman & Redfield on Negligence (6th Ed.) § 114, p. 283, the rule is stated thus:

"The rule as to what evidence will suffice to go to the jury on the issue of contributory negligence, as a question of fact, is substantially the same as that which governs the submission to the jury of the defendant's negligence, subject, of course, to the rule held by the particular court as to the burden of proof. It is a general rule, applicable in all courts, that the question is to be submitted to the jury, not only where there is sufficient testimony as to the actual facts to leave a reasonable doubt, but also where the inferences which might be fairly drawn from the facts are not certain and invariable, and might lead to different conclusions in different minds. The court is not at liberty to withhold the question from the jury, simply because it is fully convinced that a certain inference should be drawn, so long as persons of fair and sound minds might possibly come to a different conclusion."

And so in the case of *Davis* v. *Denver & Rio Grande R. Co.*, 45 Utah 1, 142 P. 705, this court, as stated in the syllabi, held that:

"The court cannot pass on the question of negligence or contributory negligence as a matter of law, unless the question is free from doubt, and it appears, considering all the evidence and the inferences that may be deduced therefrom, that reasonable men would not arrive at different conclusions thereon."

The same thought is expressed in the case of *Newton* v. *Oregon Short Line R. Co.*, 43 Utah 219, 134 P. 567, 570, where this court also said:

"All that can be said is that, unless the question of negligence is free from doubt, the court cannot pass upon it as a question of law; that is, if after considering all the evidence and the inferences that may be deduced therefrom the court is in doubt whether reasonable men, in viewing and considering all the evidence, might arrive at different conclusions, then this very doubt determines the question to be one of fact for the jury and not one of law for the court. The court can pass upon the question of negligence only in clear cases."

In the case of *Fox* v. *Oakland Consolidated St. Ry.*, 118 Cal. 55, 50 P. 25, 26, 62 Am. St. Rep. 216, the California court in considering the question of contributory negligence said:

"If the term 'negligence' signified an absolute * * * quantity or thing, to be measured in all cases in accordance with some precise standard, much of the difficulty which besets courts in the solution of this class of cases would be at once dissipated. But, unfortunately, it does not. Negligence is not absolute, but is a thing which is always relative to the particular circumstances of which it is sought to be predicated. For this reason it is very rare that a set of circumstances is presented which enables a court to say as matter of law that negligence has been shown. As a very general rule, it is a question of fact for the jury,—an inference to be deduced from the circumstances; and it is only where the deduction to be drawn is inevitably that of negligence that the court is authorized to withdraw the question from the jury. The fact that the evidence may be without conflict is not controlling, nor even necessarily material. Conceded facts may as readily afford a difference of opinion as to the inferences and conclusions to be drawn therefrom as those which rest upon conflicting evidence; and, if there be room for such difference, the question must be left to the jury."

The rule is well stated by Mr. Justice Thomas on a motion for a rehearing in the case of *Gratiot* v. *Missouri Pac. Ry. Co.* (Mo. Sup.) 16 S. W. 384, 16 L. R. A. 189. On page 195 of the L. R. A. report he said:

"That contributory negligence of the injured party, with but few exceptions, will defeat a recovery, and that a party is guilty of contributory negligence when he fails to conform to what the law requires of him, or to what a man of ordinary prudence would usually do under the same circumstances, are axioms of the law. Thus far all is easy, but when we enter upon an inquiry into what men of ordinary prudence would do, under given circumstances, the divergence of judicial opinion begins. The adjudged cases not only show that the courts and judges have been and that they are now divided as to what ordinary prudence is, but also as to who shall determine when a man has exercised ordinary prudence in a concrete case. An effort has been made to find and mark the line where the province of the court ends and that of the jury begins, but it has, in a large degree, been fruitless. Much of the difficulty and confusion involved in the discussion of the subject of negligence and contributory negligence has grown out of a desire on the part of the court to lay down abstract rules touching them, and a failure to make proper distinctions between a question of fact and a question of law. Negligence results from a violation of duty. If the duty be prescribed by law, its violation is negligence per se, and the court is bound to so declare it. But whether A. B. violated such a duty is always a question of fact. If the duty be not prescribed by law, then the question whether its violation is negligence is one of fact. Of course, we make a distinction between what the positive law requires and what prudence requires. The law cannot prescribe what men shall do, except in a comparatively few cases. In the majority of cases the law gives no specific instructions, but it requires everyone to exercise ordinary prudence in his dealings with others. In those cases where the law gives no specific directions as to conduct, the question whether A. B. was guilty of a violation of duty, and hence guilty of negligence, is always a question of fact; the law neither prescribing the standard by which to measure A. B.'s conduct nor determining what his conduct was. And here again it is important to note a distinction between the capacity in which the court acts in determining and declaring a fact and the law."

I concede that a violation of a statute or of an ordinance prescribing a course of conduct is negligence per se, and readily subscribe to the doctrine as announced by the cases

cited in the prevailing opinion that one operating or driving an automobile in the nighttime on a public highway without headlights as prescribed by the statute is per se guilty of negligence. I also am in accord with the view that if the plaintiff at the time and place in question operated his car at a speed in excess of that fixed by the statute, or was not in the exercise of ordinary care in observing a reasonable lookout, or otherwise was guilty of a want of ordinary care in operating the automobile, and such violation or failure contributed to the collision and injury but for which the injury would not have occurred, he is not entitled to recover. The pertinent question is: Who on the record, whether the court or the jury, was to determine whether the plaintiff met or violated such requirements? In considering that and the ruling granting the nonsuit, we are required to view the case in a light most favorable to the plaintiff.

The accident occurred in a sparsely settled section of the country, about 2 miles north of the little town or settlement of Kanarra and about 10 or 12 miles south of Cedar City. There are no settlements between Kanarra and Cedar City. At the place of the accident the truck in question, the body of which consisted of stakes, without lights of any kind or other signals, admittedly in violation of the statute was left standing or parked on the right-hand side of the highway going north, the hind portion of the truck extending about 5½ feet within and on the traveled portion of the highway. To the south of the place of the accident, the direction from which the plaintiff was approaching the truck, the highway was substantially level and straight. The surface of it was oiled and dark. There were no intervening objects to obstruct or obscure the view, except the darkness of the night and the dark surface of the highway. The accident occurred about 12:30 a. m. on an ordinary summer's night in July without moon. The plaintiff was alone in the automobile driven by him. He was the only witness who gave testimony concerning the collision. He testified that as he was

driving north along the highway and approaching the place where the collision occurred, he was traveling about 25 miles an hour, which well was within the speed limit fixed by the statute; that his automobile was equipped with lights as by the statute prescribed and that the headlights cast rays of light about 200 feet in advance of the automobile and about 10 feet to the side; that he observed a careful lookout along the highway in the direction in which he was driving but did not discover the presence of the truck until he was about 20 feet from it, and then immediately applied the brakes and swerved the car to one side but was unable to avoid colliding with the truck; that he was not blinded by headlights of approaching or passing automobiles; and that there were no intervening objects obstructing his view and that the presence of the truck or of a similar stationary object on the highway was unanticipated and unexpected by him. The plaintiff was rendered unconscious and in that condition was later found in his car by others. The truck immediately after the accident was driven away by some one (presumably by the driver), and later was found along the side of the highway several miles north of the place of the accident.

One witness testified that he in an automobile passed the truck at about 11 o'clock p. m., about 3½ miles south of Kanarra; that the truck then had no tail-light; and that he did not discover the truck until he was within about 100 feet of it. Another witness testified that still earlier in the night he in a truck with good lights passed the truck in question along the side of the highway still farther south of Kanarra, and that it then had neither tail nor head lights and that he did not discover the truck until about 30 feet away. The same witness testified that as he returned from his trip after the accident and driving north and approaching the place of the accident he did not see or notice plaintiff's automobile on the highway until he was within 30 or 35 feet of it, and as he got to it he stopped and found the plaintiff unconscious in the car and took him to Cedar City; that on

the way he saw the truck standing along the highway about 4 miles north of the place of the accident which he had seen earlier in the night; and that the driver of the truck apparently was changing a tire.

In view of the stated conditions it is argued, and the argument is adopted by the prevailing opinion, that the testimony of the plaintiff that his automobile was equipped with standard headlights as by the statute required, that he observed a proper lookout, and operated the automobile at a speed of only about 25 miles an hour as he approached the place of the accident, is as matter of law false, and must be disregarded as being unworthy of belief. In other words, upon the stated conditions, the argument in effect is that the happening of the accident so conclusively speaks the negligence of the plaintiff in one or more of the stated particulars, as not to be overcome by the testimony of the plaintiff or by oral testimony in conflict therewith, not even to the extent of raising a question of fact for the jury.

I cannot concur in that. The asserted conclusion rests entirely on argument and inferences with respect to which the jury, within whose province it was to determine the credibility of witness, the weight to be given their testimony, and to deduce all reasonable inferences from the facts and circumstances of the case, was quite as capable of arriving at a correct result as was the court. What was said by Mr. Justice Hunt in the case of *Sioux City & P. R. Co.* v. *Stout*, 17 Wall. (84 U. S.) 657, 21 L. Ed. 745, is as true now as when declared, that it is assumed that twelve men of the various walks of life and of the average of the community know more of the common affairs of life than does one man, and that they can draw wiser and safer conclusions from admitted facts than can one single judge. The case here well illustrates the application of the oft-repeated principle of law that the duty imposed upon one charged with negligence is for the court, but whether he performed or violated that duty is, as a general rule, for the jury. Upon the given facts and circumstances of the case, the inquiry here is:

Within what distance was the plaintiff in the performance of duties imposed upon him in the exercise of ordinary care, driving along the highway in the nighttime, bound to discover an unanticipated and unexpected substantial object unlawfully left and placed on the public highway and in a section of the country sparsely settled? No abstract proposition of law can be laid down as to that. Of necessity the question is relative and not abstract. A jury of average intelligence and experience are quite as capable, if not more so, of reaching a correct conclusion upon a given state of facts and circumstances, as one on a wool sack with judicial robes wrapped about him "laying down abstract rules" with respect thereto and who may never have driven an automobile on a highway after dark or after curfew. A traveler on a highway has a right to assume with reasonable limitation that others using it will exercise reasonable care and obey the law of the road, and the failure to anticipate the omission of such care does not render him guilty of negligence. 1 Blashfield, Cyc. Automobile Law, 1981. An automobile observing the law of the road is not required to be continually on the alert and is not bound to anticipate that some one will suddenly block his path. 3-4 Huddy, Cyc. Automobile Law (9th Ed.) 346. Much less is he required to anticipate that some one has or will obstruct the highway by unlawfully placing a substantial object without lights or signals on the traveled portion of the highway and without giving warning of its existence. To hold the contrary is to hold that an automobilist is required to exercise reasonable care not only to discover ordinarily anticipated dangers incident to travel, but at all times to exercise extraordinary care to discover without notice or warning unanticipated dangers and obstructions created by others through negligence and in violation of law. Since there is a natural presumption that every one will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate negligence on the part of the defendant or of a stranger. He had the right to assume that every one else

will obey the law and to act on such belief. Such rule applies, in all cases of normal conditions, to things as they ought to be, and to situations where the plaintiff has neither knowledge or notice of such facts as would cause a person of ordinary prudence to anticipate the negligence and violation of law causing the injury. It is only in case the plaintiff has knowledge or notice or is possessed of such facts or circumstances as reasonably to anticipate such negligence or violation of law, or where it is his duty to know thereof, that he is required to take reasonable precaution against it and to avoid the consequences thereof; in which case, the existence of contributory negligence is a question of fact for the jury. 1 Shearman & Redfield on Negligence (6th Ed.) § 92.

That the plaintiff unexpectedly and without notice or warning encountered a dangerous obstruction on the highway without lights or signals and created by the negligence and unlawful act of the defendant, admits of no controversy. He testified that with proper headlights, driving his automobile at about 25 miles an hour, and observing a careful lookout, he did not discover the truck until about 20 feet away. Such distance and rate of speed were given only as estimates. They may not now be taken with exactness and abstract propositions of law stated upon them. A witness testified that at about 11 p. m. he in passing the truck then without a tail-light did not discover the truck until within about 100 feet of it; another who in a truck with good lights, earlier in the night, passed the truck in question without lights and did not see or notice it until within about 30 feet of it; and on his return trip after the accident driving north towards the place of the accident did not see plaintiff's automobile on the highway until within about 30 or 35 feet of it. In view of that and of all the facts and circumstances in evidence, I think it may not be said that the court as matter of law was justified in rejecting the testimony of the plaintiff as being contrary to physical facts or unworthy of belief. Though it be thought his testimony on the subject

was contradictory to or inconsistent with inferences and deductions from admitted facts, still the plaintiff was entitled to go to the jury and take their judgment with respect thereto. *Ely* v. *Pittsburgh, etc., R. Co.,* 158 Pa. 233, 27 A. 970.

However, the cases of *O'Brien* v. *Alston,* 61 Utah 368, 213 P. 791, and *Nikoleropoulos* v. *Ramsey,* 61 Utah 465, 214 P. 304, seemingly are cited as controlling on the question. In the first-cited case, the defendants Alston et al were engaged in a reconstruction of a public highway in the doing of which a section of the highway was withdrawn from travel. Barricades were placed at the ends of the intersection and a detour provided for passage. An automobile driven by plaintiff's driver was operated against the barricade causing the injury. The plaintiff had judgment in the court below which on appeal was reversed on the ground of contributory negligence. The driver of the automobile knew the highway was being reconstructed, that a portion of it had been withdrawn from travel, and knew he had arrived at or near the point where the roadway was barricaded when he drove against the barricade. He further testified that the headlights of the automobile were equipped with what were called Warner lenses, which threw the light down on the road and not ahead of the automobile except a distance of only about 75 feet; that as he traveled along the highway he could not see an object over 75 feet away; and if the lights on the automobile had thrown a light 125 or 150 feet ahead of the car, he could have seen the barricade and prevented the accident. The statute then required automobiles to be equipped with headlights which threw a light sufficient to reveal substantial objects at a distance of 150 feet in advance of the car. Because of such testimony of the driver himself of insufficient lights and of his further testimony that he on a dark and rainy night operated the automobile at a speed of 27 miles an hour, when he knew he was about to approach the section of the highway under reconstruction, barricaded and withdrawn from travel, he

was held guilty of negligence as matter of law. It is apparent that the facts in the O'Brien Case are quite dissimilar from those of the case in hand. Primarily for the reason that in the one the driver had knowledge of the obstruction created by reconstructing a portion of the highway and was cognizant of it as he was approaching it, while in the other he was without knowledge or notice of an unanticipated obstruction created by the negligence and unlawful act of the defendant; that in the one the *testimony of the driver* as to the conditions of the lights, his knowledge or the want of it as to the existence of the obstruction and within what distance it could be discovered, and as to the operation of the automobile, was not rejected but given full credit and the case ruled upon such assumption, while in the other the *testimony of the driver* in such particulars is as matter of law discredited and rejected and the case ruled on inferences and deductions from the happening of the accident; that since the plaintiff collided with the obstruction he did not have proper or efficient lights though he testified he did or did not observe a proper lookout, though he testified he did or operated his automobile at an excessive and unlawful speed which he testified he did not do, or otherwise was guilty of negligence else the collision would not have happened. It further should also be observed that results reached in a case and the reasons given therefor are to be considered in view of the particular facts of the case, for they constitute the foundation of the opinion; and a concurrence therein does not necessarily imply a concurrence in all of the reasons given or language employed in reaching the result. Thus, because the driver of the automobile in the O'Brien Case was guilty of negligence, it by no means follows that the plaintiff in the case in hand must also be held guilty of negligence.

In the Nikoleropoulos Case, the plaintiff in Salt Lake City was struck and injured by an automobile operated by the defendant. By the pleadings both were charged with negligence. The case was not withheld from the jury on

either ground of alleged negligence. Both issues were submitted to the jury, who rendered a verdict in favor of the defendant. On appeal by the plaintiff no claim of error was made in submitting both issues to the jury. The complaint made of committed error was the court's refusal to charge the jury as requested by the plaintiff. None of the requests involved or called for a binding instruction as to negligence or the want of it of either party. The case was presented on the theory that the question of the alleged negligence of both parties was one of fact for the jury. The holding was that the plaintiff was entitled to the requests, or to some of them. The judgment was thus reversed and the case remanded for a new trial. Because the Nikoleropoulos Case did not involve the question of contributory negligence I think it less pertinent than the O'Brien Case.

However, let it be conceded that the duty imposed on automobile drivers is as stated in such cases and in some other cases cited in the prevailing opinion, still whether the plaintiff failed, or omitted to comply with such requirements is, on the record and so generally on a given state of facts, a question for the jury; and because a driver in the nighttime drove against or collided with a substantial object unlawfully left or placed in a public highway without lights or other signals to give warning of its existence, does not so conclusively speak the failure or omission of the performance of such duty, or the want of ordinary care on the part of the driver in the operation of the automobile, as to justify as matter of law the rejection of testimony as being false and unworthy of belief that the duty imposed was performed and due care exercised.

The case is not at all analogous to railroad crossing cases where the railroad track itself is a warning of danger and where the traveler approaching it and about to cross it is in duty bound to look attentively in both directions and listen for approaching trains; and where he has a clear and unobstructed view of an approaching train, as illustrated in the case of *Schofield* v. *Chicago, Milwaukee, etc., R. R. Co.,*

114 U. S. 615, 5 S. Ct. 1125, 29 L. Ed. 224, and is struck and injured by it, a natural presumption arises that he either did not look or if he looked he did not heed what was plainly visible to him. For various and apparent reasons no such positive or abstract rule of law may he laid down as to one traveling a public highway in the nighttime to discover unanticipated dangers created through the negligence or violation of law by the defendant causing the injury; and hence the failure of a traveler in the exericse of ordinary care in the nighttime to discover such a danger in time to avoid colliding with it presents a question of fact and not of law. I think the case falls within and should be ruled by the familiar principles of law as shown by the authorities heretofore referred to and by the cases cited by the appellant and referred to in the prevailing opinion.

EPHRAIM HANSON, J.

I concur in the views expressed by Mr. Justice STRAUP in his dissenting opinion.