## GEIGY CHEMICAL CORPORATION
v.

### Lewis ALLEN.
#### No. 15335.

United States Court of Appeals Fifth Circuit.

June 28, 1955.

Hutcheson, Chief Judge, dissented.

Charles Cook Howell, Jr., Jacksonville, Fla., Benmont Tench, Jr., Gainesville, Fla., for appellant.

Wilbur F. Anderson, Grover C. Perdue, Jr., Bronson, Fla., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal involves the question whether the Appellee who drove his automobile into the back end of Appellant's truck, negligently stopped on the highway, was guilty of contributory negligence as a matter of law, so as to bar his claim for damages. The court below submitted his civil action for personal injuries and destruction of his automobile to the jury which returned a verdict in Appellee's favor for $4,000.00. From the judgment entered thereon, Appellant appeals claiming that, although its negligence was admitted, the trial court should have sustained its motion for a directed verdict on the ground that the evidence showed as a matter of law that Appellee's negligence contributed to the damages sustained and precluded recovery under Florida law. The pertinent facts are these:

About eleven o'clock in the nighttime of Thanksgiving Eve, 1953, Appellant Chemical Company was operating its large truck and trailer in an easterly direction along Florida State Road 500. Its driver, accompanied by his wife, noticed that the motor was missing and concluded that he should stop and examine to discover the trouble. Having bent an axle the night before when he drove onto the shoulder of another road, he concluded that he would not risk such a maneuver this time, and that he would

stop with all of his wheels on the pavement. The road was paved, nineteen feet wide with shoulders of dirt about three feet wide.

As soon as he stopped, he went to the back of the truck to light and set out pot flares for the protection of the truck. He was not carrying fusees or reflectors as required by Florida law. The accident happened about three or four minutes after he had stopped, and no flares or other lights had been placed along the road to warn oncoming cars. According to Appellee the lights on the truck and trailer were not burning.

Appellee, an automobile mechanic, was driving east along the same road in company with a male companion. They were on their way to a friend's house to pick up one or more dogs for a hunt the following day and were apparently absorbed in conversation about the dogs which was interrupted by the crash of Appellee's car into the back of the truck.

When Appellee was some distance from the stalled truck, probably 500 feet, he observed an automobile coming towards him from the opposite direction with its bright lights burning. Appellee dimmed his own lights, and the approaching motorist did likewise. As the two cars passed, Appellee raised his lights to bright and for the first time discovered the truck. According to his best estimate, he was about forty-four feet from the truck at that time and was driving at a speed of forty to forty-five miles per hour. He slapped on his brakes immediately but crashed into the back of the truck. Appellee introduced evidence that skid marks, made evidently by the left front wheel of Appellee's car, extended back from the point of collision a few inches more than fifteen feet and began slightly north of the center line of the road.

Appellee, a mechanic, had recently inspected his automobile and found it in perfect condition as to lights, brakes and other mechanical features and the tires were new and the treads were sharp. The road was straight for more than a half mile in each direction and was dry and the weather was clear.

The only eye witnesses were Appellee and Appellant's driver, and the facts above set forth constitute Appellee's version except as to phases of the proof which Appellee did not cover and about which there was no dispute. Appellee's testimony was vague and unsatisfactory, and the court below held a tight rein on his cross-examination, an unfortunate circumstance in view of the fact that his right to recover is predicated largely on his own testimony, and the cross-examination was developing from Appellee's testimony which was inherently unbelievable and inconsistent with his other testimony.

Appellee testified at one time that he was looking straight down the highway towards the truck, and stated that he did not ever look at the lights of an oncoming car but kept his eyes focused on his side of the road. Upon being pressed with the question, "Those lights didn't affect you at all did they?" He replied, "No, sir". Nevertheless, he reiterated several times his statement, "I give him dim and he give me dim and just as I passed the car that was facing me, I hit the back of that van. There was nothing I could see on the road." He stated upon cross-examination that, when he passed the car he was meeting and turned on his bright lights, he was as far from the truck as the back of the court room (this upon measurement proved to be forty-four feet). When pressed as to how far it would take him to stop the car he was driving at the stated speed—he was an experienced driver and accustomed to drive this car and familiar with the road at the point—he first said, "It wouldn't take you five foot". Later he varied this estimate but at no time did he express the opinion that more than twenty-five feet would be required to stop his car at the speed he was making.

At one point he indicated that his car was making the same speed at the time of the collision it was when he passed the other car, but later he insisted that he

must have reduced the speed some before the impact.

At no time did Appellee claim that the car he was meeting had brighter than ordinary lights, or that those lights were not dimmed at the proper time, or that his meeting with that car was attended with any unusual circumstances. Nor did he seek to give any explanation of why he had not seen the truck before he passed the other car or why, within the forty-four foot space, he did not reduce his speed enough to pass the truck on his left or at least to make the collision relatively inconsequential, or why his brakes did not take effect until he was fifteen feet from the truck. Appellee did not claim that he reduced his speed or took any other step for the protection of himself or those who might be beyond the meeting point of the other car at the time his vision was diminished or destroyed by its lights.

In order that Appellee's testimony may be fully understood and appraised, it should be noted that other testimony showed without dispute that the truck was forty-five feet long, eleven feet four inches high, nearly eight feet wide, and weighed above fifty-one thousand pounds. Its sixteen wheels were all locked by one hundred twenty pounds air pressure. The impact of Appellee's car with the truck was sufficient to knock the truck driver's wife from her seat, to force the back wheels forward against the next set of wheels on the trailer, to bend the truck axles, break its springs, blow out one tire, causing a damage of Seven Hundred Eighty-five Dollars, and to move the truck substantially eight inches.

The testimony showed further without contradiction that the skid marks of the Appellee's car began slightly on the left or north side of the center line of the road and veered about eighteen inches south of the center line before the point of collision. Appellee's car was a total loss; the engine in it was driven back into the car with such force as to kill the passenger, and to injure the Appellee seriously. The pictures of the car in the record show that the front end was crushed down by being driven under the truck to a point including the top of the car immediately over the front seat, and that the front seat itself was driven back to contact with the back seat.

It is not improper to note that the truck driver stated that all of the parking lights on the truck were lit (Appellee denied this), that he had worked as fast as he could getting out the pot-type flares and lighting one to place on the road a short distance behind his truck when he observed Appellee's car coming at a terrific rate of speed,—he estimated it at seventy miles an hour. He stated further that he had to jump away from the point he was placing the flare to keep from getting hit.

Appellant contends that the facts adduced in support of Appellee's case show without dispute that he was not keeping a proper lookout in front of him, and was undisputedly violating the range of vision doctrine as established by the courts of Florida and recognized by this court. Attention is called to the Florida Statute [1] requiring that headlights shall be adequate to reveal persons and vehicles at a distance of at least three hundred fifty feet; and that Appellee testified that his bright lights would satisfy that requirement. It is further argued that the testimony shows without contradiction that Appellee was not obeying the Florida rule that, "it is the duty of a motor vehicle driver at all times, day or night, to operate it so that he can stop or control it within the range of his vision", Appellant calling attention to decisions announcing that rule from this court as well as the Supreme Court of Florida.[2]

1. Sec. 317.58, Florida Statutes Annotated: "The headlights required under this chapter shall be of such intensity that when lighted they will reveal persons and vehicles at a distance of at least

three hundred fifty feet ahead for all conditions of loading."

2. Walker v. Loop Fish & Oyster Co., 5 Cir., 211 F.2d 777, 779; Greiper v. Coburn, 139 Fla. 293, 190 So. 902; Miami

We think it is clear that Appellee's own contributory negligence barred his recovery under Florida law.[3] Appellee's own testimony gives rise to the definite presumption of contributory negligence and his own efforts at weakening or removing that presumption served but to strengthen it.[4] When projected against the background of the other undisputed evidence and the physical facts coupled with the photographs, plaintiff's own testimony establishes as a matter of law that he was guilty of contributory negligence.

The large and easily visible truck was certainly occupying Appellee's half of the road as he approached the point of collision and, by his own testimony, he was meeting a car whose lights are bound to have silhouetted the truck between the Appellee and the lights of the oncoming car. Likewise, Appellee's own lights are bound to have revealed the presence of the truck before he and the oncoming car met. If Appellee was looking towards the truck as he claimed he was, he is bound to have seen the truck unless the lights of the oncoming car blinded him.

If Appellee seeks to explain his failure to see the truck upon that theory, he is impaled upon the strict doctrine of Florida law,—and it is not different from the general law of the road enforced everywhere,—that every automobile must be so operated that it can stop or be brought under control within its range of vision. The skid marks show definitely that Appellee made no real effort to stop his car until he was within fifteen feet of the point of collision and this is corroborated by his statement at one point in the record that he did not see the truck until the point of impact was right upon him.

According to Appellee, he and the motorist he met both raised their lights as they passed each other, and this point was substantially forty-four feet from the truck. Appellee fails to explain why he did not use that forty-four feet for bringing his car under such control that he could pass the truck by turning to his left, or why he did not stop it entirely. It will be recalled that he first stated that he could stop his car within five feet, and the farthest estimate he ever gave was twenty-five feet.

Appellee fares no better, then, if we adopt the assumption that he was not able to see beyond the lights of the oncoming car. He rejected that thought when asked the direct question, but the inference arises from his testimony, given at one or more points, that he did not see the truck until he was right upon it.

If Appellee was blinded so that he could not see up the road towards the truck, it was his duty to bring his car immediately to a stop until the blinding glare should be removed, or at least to bring it under such control that he and those who might be beyond the glaring light would be protected. Admittedly he did not do this, and he runs afoul the doctrine announced in the Florida cases listed in Note 2, supra, and recognized in the recent decision from this court written by Judge Strum, who had himself been a member of the Florida Supreme Court, Walker v. Loop Fish & Oyster Co., 5 Cir., 211 F.2d 777. That case also involved a collision in which an automobile was driven into the back of a truck. The truck was being permitted to drift slowly backward along the paved highway in order to make a turn into a side road which had been inadvertently passed.

Walker was driving his car at a speed of about twenty-five miles per hour when he smashed into the rear of the truck. Suits brought by him and passengers in his car were tried by the court without

Coca Cola Bottling Co. v. Mahlo, Fla., 45 So.2d 119; King v. Griner, Fla., 60 So.2d 177; Miami Beach Ry. Co. v. Dohme, 131 Fla. 171, 179 So. 166.

3. General Outdoor Adv. Co. v. Frost, 5 Cir., 1935, 76 F.2d 127; Union Bus Co. v. Smith, 104 Fla. 569, 140 So. 631.

4. Cf. Greiper v. Coburn, 139 Fla. 293, 190 So. 902, 904 and cases cited.

a jury and recovery was denied because the evidence showed that visibility was reduced to a point where any speed above ten miles per hour would have been improper. Judge Strum said in part in affirming that judgment:

"The Florida Supreme Court holds that it is the duty of a motor vehicle driver at all times, day or night, to operate it so that he can stop or control it within the range of his vision [citing several Florida cases]. Plaintiff, Walker, the driver, was clearly guilty of negligence in this respect, which would preclude recovery by him. In Florida, the comparative negligence rule does not apply in this type of case. Contributory negligence on the part of the plaintiff precludes recovery, as at common law."

■ Visibility reduced by the lights of an oncoming car must be dealt with in the same manner as reduced visibility resulting from fog. The preservation of life and property demands that every motorist stop his car when he cannot see where its motion is leading him. If the mass which loomed up before the unseeing eyes of Appellee had been a group of school children, the result would not have been different. The fact is, if a motorist is not to be counted negligent when he meets a car having normal lights and operated in the usual manner, and moves nonchalantly into an area where the road ahead is completely hidden from his view, and does nothing at all to protect those who may be in the hidden area, our roads will become places of potential carnage every time two motor cars meet in the nighttime. The law required absolutely that Appellee begin reducing his speed immediately when his view was cut off. He did not do that, and his failure to do it was negligence.

It is clear to us that this collision was caused by failure of Appellee to look where the law required him to look, or to see what the law required him to see, or to keep his car under such control that he could stop it within the range of his vision.

The foregoing discussion assumes that Appellee was telling the truth in the testimony he gave. But some of what he stated cannot be accepted as the truth. We cannot accept as true his estimate that he could stop his car making from forty to forty-five miles an hour within five feet, nor even within twenty-five feet. But common sense teaches that Appellee's car could have been slowed down within the intervening forty-four feet to a point where he could easily have passed the truck to Appellee's left, or at least to a point where the impact with the truck would have caused little or no damage.

■ Moreover, the physical damage done to Appellee's automobile and to the truck, as revealed by the photographs in the record and skid marks testified to by Appellee's witness, refute and remove from the realm of probability Appellee's testimony as to the speed at which he was driving when he passed the other car. Courts are not required to believe testimony which is inherently incredible or which is contrary to the laws of nature and of human experience, or which they judicially know to be unbelievable.[5]

5. The rule in such cases is well expressed by the Supreme Court of Mississippi in Teche Lines v. Bounds, 1938, 182 Miss. 638, 179 So. 747, 749: "If there be any one thing in the administration of law upon which the decisions, the texts, and the general opinion of bench and bar are in agreement, it is that evidence which is inherently unbelievable or incredible is in effect no evidence * * *. And * * * the overwhelming weight of authority throughout the country is that believable or credible evidence in civil cases is that which is reconcilable with the probabilities of the case and that bare possibilities are not sufficient. Where evidence is so contrary to the probabilities when weighed in the light of common knowledge, common experience, and common sense that impartial, reasonable minds cannot accept it other than as clearly an improbability, it will not support a verdict.

" * * * 'An inherently incredible story is not made credible by being sworn to. * * * Courts are not required to

It is our view that Appellee was plainly guilty of negligence as a matter of law, which bars his right to recovery under the Florida law and that he ought not to be enriched when he is guilty of the conduct plainly reflected by the only credible evidence in the record, and that the court below should have directed a verdict for the defendant. Its judgment is, therefore, reversed and the case remanded with direction to enter a judgment for Appellant.

Reversed and rendered.

HUTCHESON, Chief Judge (dissenting).

The case is a close one but, in my opinion, the question of Appellee's contributory negligence was one for jury decision. Undoubtedly, the jury would have been warranted in holding that Appellee was negligent, but we have no right to invade the jury's function even though we believe it might better have reached the opposite result. The federal rule governs and it is thus stated in a quotation taken by this court from a decision of the Supreme Court: [1]

" 'The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury.' "

Where Appellant's negligence is as palpable as it is here I am not able to say, under the facts of this case, that reasonable men might not have concluded from all of the facts and circumstances that Appellee was not guilty of such negligence as would bar his recovery. I would affirm.

believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible * * * although there may be evidence tending to support it.' * * * " And see, also, Samulski v. Menasha Paper Co., 147 Wis. 285, 133 N.W. 142; McCarthy v. Bangor etc. Co., 112 Me. 1, 90 A. 490, L.R.A.1915B, 140; Lessig v.

Reading etc. Co., 270 Pa. 299, 113 A. 381, and Norfolk & Western R.R. Co. v. Strickler, 118 Va. 153, 86 S.E. 824.

1. Lowry v. Seaboard Airlines R. Co., 5 Cir., 171 F.2d 625, 630, quoting from Grand Trunk Ry. Co. v. Ives, 144 U.S. 408, at page 417, 12 S.Ct. 679, 36 L.Ed. 485.