501 P.2d 1207

**Lettie Dell BROCK, Plaintiff and Respondent,**

v.

**Dean O. WARD and State Farm Mutual Automobile Insurance Company, Defendants and Appellants.**

No. 12737.

Supreme Court of Utah.

Oct. 10, 1972.

Ellett, J., filed a concurring opinion.

Crockett, J., dissented and filed an opinion in which Tuckett, J., concurred.

Glenn C. Hanni, of Strong & Hanni, Salt Lake City, Roger Dutson, Ogden, for defendants and appellants.

Richard H. Thornley, Ogden, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a jury verdict awarding plaintiff damages in an auto collision case, where plaintiff, driving to work, ran into the rear end of a vehicle parked partly off and partly on a comparatively wide highway about 7:00 a. m. Reversed, with costs to appellants.

The facts are not complicated. Looking at them in a light of admissions and concessions made and largely testified to by plaintiff herself: The road was paved and 22 feet wide, was clear, dry, straight and level, and it was daylight. Defendants' parked truck was 3 to 3½ feet on the pavement, and the rest of it on the shoulder of the highway. Plaintiff said the sun was just coming up over the horizon almost directly toward her left, producing some glare. Nonetheless, she said she saw the parked

truck a quarter of a mile away before hitting it. There was nothing in front of her on the highway except the truck. She neither slowed down nor tried to go to the left of it although she had 18 feet to do so and could have done both. Furthermore, she conceded that she saw the truck at all times before the collision. Under such circumstances it is impossible to understand how the jury could have concluded else than that she was chargeable with negligence barring recovery. Having done otherwise, we think, was the product of conjecture and that the trial court should not have given the case to the jury at all, but should have found that plaintiff was negligent as a matter of law. It may or may not have been the result of empathy toward plaintiff as opposed to the insurance company, a defendant here,—an unusual circumstance in collision cases,—where the jury certainly knew the company was on the risk, and could pay. This happens on occasion.

We are sympathetic on account of the plaintiff's loss in this case, but we would be remiss in concluding other than that which we do in reversing the decision since we are convinced and conclude, that under the application of sound legal principles and the doctrine of stare decisis, compensability cannot be adjudged here. We believe our conclusion is borne out by the authorities,— our own case of Hirschbach v. Dubuque Packing Co., 7 Utah 2d 7, 316 P.2d 319 (1957), and other dispositive authorities reflected in 22 A.L.R.2d 292, 300.

CALLISTER, C. J., concurs.

ELLETT, Justice (concurring).

I concur, but in view of the dissenting opinion would like to make these further observations.

The dissenting opinion attempts to excuse the plaintiff from her negligence by accepting her self-serving declaration that when she was 100 to 150 feet from the truck "the sun came full boom over the mountain" so that she could not see that which she had already been seeing for at least a quarter of a mile. She said she thought the defendant's truck was entirely off the highway. She thus was negligent in seeing but not comprehending that which was clearly visible to her. The highway was straight and level, and there was no traffic to interfere with her moving over into another lane when she saw or should have seen that the truck was in her own lane.

Her self-serving testimony is unworthy of belief. She was driving in a southeast [1] direction and if we accept her statement as

---

1. The dissent says this could be a little south of east. We take judicial knowledge that the road four miles south of the town of Willard is mostly south.

true the sun could not come "full boom" so as to blind her.[2]

On July 17, the day of the accident, the sun rises approximately 16 degrees north of east and could not blind her even if it came "full boom" over the mountain. It would be rising at least 60 degrees to the left of her line of sight.

The dissent further attempts to change the direction of the "full boom" *over* a mountain to "full boom" *around* a mountain and *laterally* through a depression. There is no evidence to justify any such statement. Even if the sun came around a side of a mountain it would not do so suddenly. The plaintiff was traveling 55 miles per hour and would travel 80 feet in one second of time. The sun is approximately 866,000 miles in diameter and distant 93,000,-000 miles from all mountain peaks. Therefore it is distant approximately 107 times its diameter. By the law of proportional triangles the plaintiff would need be 107 times 80 feet or approximately 8560 feet from the peak in order for the sun to appear laterally from behind it in one second.

We take judicial knowledge of the fact that there is no sharp shadow of the sun at a distance of one and one-half mile from a perpendicular wall or mountain cliff and so there could be no sudden blinding of the plaintiff even if the speculation of the dissent were a fact.

There is no excuse for plaintiff's running into the parked truck, which she admits she saw for at least a quarter of a mile.

Trial judges should not be parties to a proceeding which awards damages not sustained by the evidence. The dissenting opinion if adopted by this court would tend to prevent a trial judge from ever overturning a jury verdict hereafter, regardless of its defects, for there can never be another case where contributory negligence was more certain than in this one.

CROCKETT, Justice (dissenting).

I would sustain the jury verdict and the judgment of the trial court thereon.

This is one of the anomalies in lawsuits where a divided appellate court, by a majority of one justice, rules in effect that no reasonable minds could conclude as have the other justices, the trial judge, (in this instance *two* district judges) and the unanimous verdict of all of the jurors.

Notwithstanding what has just been said, candor compels acknowledging that the issue presented here is not without difficulty, and upon which I concede there is a basis upon which "reasonable minds" may differ. Each of the parties to this action makes

---

2. The sun is one-half degree in diameter, and so the rotation of the earth would cause the sun to be completely exposed in the time it would require to turn one-half degree. There are 86,400 seconds in a day. Dividing that sum by 720 (the number of half degrees in a circle) gives 120.

plausible arguments based on what, it is not to be doubted, they sincerely regard as persuasive grounds to support their respective contentions.

The plaintiff contends for her right of trial by jury to obtain damages which she claims resulted because of the defendant's wrong; and the defendant for his right to be protected from liability which he urges cannot be imposed by a correct application of the rules of law, because even though he may have been guilty of error, the plaintiff's injury was nevertheless her own fault for not seeing and avoiding his truck.

As a foundation to consideration of the only issue here involved: i. e., whether the trial court was compelled to rule as a matter of law that the plaintiff was contributorily negligent, there are certain principles to be had in mind: The burden is upon the defendant to prove and to convince the jury by a preponderance of the evidence that the plaintiff was contributorily negligent. The court could properly take that issue from the jury only if the evidence so demonstrated with such certainty that all reasonable minds would be so persuaded. On the other hand, if the evidence is such that reasonable minds acting fairly thereon could remain unpersuaded, then the trial court is justified in submitting the issue to the jury.[1] In making that appraisal, we should look upon the evidence and any in-ferences that fairly could be drawn therefrom in the light favorable to the plaintiff.

At about 7:00 a. m. on July 17, 1968, plaintiff was driving from her home in Willard along U. S. Highway 91 to her work at the Ogden Defense Depot. The evidence is that in the area of the collision she was traveling southeasterly. (It should be noted that "southeasterly" is a general term, which could include points of the compass from just south of due east to just east of due south.) The mountains, which run generally north-south, east of the highway, were in her view. She testified:

A. Well, about a block, approximately, ahead of me I noticed a truck parked off the road. It appeared to be off the road. But the sun kind of glared. *It was just coming up over behind a peak.* And all the way along that *truck appeared to be off the road entirely.* When I got within a short distance, the sun came full boom over the mountain, and my eyes had to adjust to it. . . . the truck appeared to be off the road. I assumed it was. But my eyes had to adjust to the sun coming over, I guess,

. . .

. * . * * . : * * *

Q. And just describe what happens as the sun makes its last move over the top of the mountain, . . . . . .

1. Johnson v. Lewis et al., 121 Utah 218, 240 P.2d 498; Stickle v. U. P. R. Co., 122 Utah 477, 251 P.2d 867.

A. Well, . . . *There is just a sudden glare all at once.* And your eyes are not adjusted to the bright light. It takes a few seconds to adjust them.

Q. Now then what happened as your eyes were adjusting? . . .

A. I crashed into the back of the truck.

The obstacle confronting the plaintiff is the look, see and heed rule: that where there is an obstacle plainly to be seen, and one fails to avoid it, it is ordinarily held that he was negligent either in failing to look or failing to heed.[2] However, that rule in itself is subject to being applied in light of the most fundamental rule in law of torts, that the duty of care is measured by what an ordinary, reasonable, and prudent person would do under the particular circumstances. We have recognized modifications of the look, see and heed rule in applying it under special circumstances: that where there is something to interfere with the view of the driver, or with his ability to avoid the obstacle, so that reasonable minds acting fairly on the evidence could believe that the plaintiff's conduct was within the standard of reasonable care under the particular circumstances, or more accurately stated, where they could refuse to be persuaded that her conduct fell below the standard of due care, then she need not be judged negligent as a matter of law, but the issue is one for the jury.

A recent case in which we dealt with that rule is Durrant v. Pelton.[3] In a fact situation reversed from this one, the driver of a stalled vehicle sued the driver of a vehicle which ran into her car from the rear. It was held that because there was disputed testimony as to factors which may have excused the defendant driver from seeing the parked vehicle, i. e., whether it was snowing, how dark it was, and relating to oncoming traffic, a jury question was presented. The court stated:

The broad general Dalley rule . . . has been modified by subsequent cases. [Citation] It has been held inapplicable where the lights of an oncoming automobile may have suddenly and unexpectedly blinded the driver who then ran into the rear end of a truck parked on the pavement, [Citation] . . . .

The court also pointed out other modifying circumstances which we refer to but omit

2. Sometimes referred to as the Dalley Rule as stated for this court by Justice Elias Hansen in Dalley v. Mid-western Dairy Products Co., 80 Utah 331, 15 P.2d 309 (1932) ; see also Clark v. Union Pacific R. Co., 70 Utah 29, 257 P. 1050; and Whitman v. W. T. Grant Co., 16 Utah 2d 81, 395 P.2d 918.

3. 16 Utah 2d 7, 394 P.2d 879. That the application of the rule of the Dalley case has been confined rather strictly to similar fact situations, and not applied where variations may justify driver's failure see Hirschbach v. Dubuque Packing Co., 7 Utah 2d 7, 316 P.2d 319, and cases listed in footnote 1 to that case.

repeating here in the interest of brevity. The court further said:

. . . as to what constitutes a proper lookout is usually . . . a latter-day classic question for jury determination, and each trial and appellate court must determine the question as a matter of law *only when convinced that reasonable persons could not disagree* upon the question. . . .[4]

Reverting to the evidence which the jury may have considered as supporting plaintiff's position: that the jury was justified in remaining unpersuaded that her conduct was below the standard of care an ordinary prudent person would have observed under the circumstances, these observations should be considered in the composite: If the defendant's truck had been *entirely* in the traveled lane of the highway, it would have been a plainer warning to the plaintiff. The impression she says she had, that it was clear of the highway, may have been created more readily because it was parked almost completely off the highway with only its rear corner protruding about 3 feet on the highway. Closely related to this is the fact that she had the right to assume that the truck was off the highway in compliance with law, and to act and rely upon that assumption until, in exercise of due care, she perceived to the contrary.

Also to be considered in conjunction with the foregoing are the facts that the dawn was imminent in back of the irregular skyline along the crest of the mountains; and as plaintiff traveled along, the sun came *laterally* clear of a peak, and through a depression, its rays suddenly came into her sight, causing the effect she described, impairing her vision at the most unfortunate time, and thus resulting in the collision with the corner of the truck protruding into the highway. This may be regarded as a rare occurrence, or even as a remote possibility. But even remote possibilities do in fact happen, and they cause accidents. That is what the plaintiff says did occur. That is what the jury believed; and they were not convinced that what happened to the plaintiff might not have happened to other reasonable and prudent persons in the same circumstances.

In order for the defendant to prevail, there must be an affirmative answer to both of these propositions: that in the situation so described all reasonable and prudent persons would necessarily have seen and

---

4. Quoting from Covington v. Carpenter, 4 Utah 2d 378, 294 P.2d 788; this in turn echoes the statement of Justice Frick in Newton v. O. S. L. R. Co., 43 Utah 219, 134 P. 567: "Where, . . . it may reasonably be said that different minds . . . might arrive at different conclusions . . . the question of negligence must of necessity be determined as one of fact and not of law . . . if after considering all the evidence . . . the court is in doubt whether reasonable men . . . might arrive at different conclusions, *then this very doubt determines the question to be one of fact for the jury.*"

avoided a truck; and the second, correlated thereto, that all reasonable minds would so believe. In regard to those propositions it seems worthy of consideration that the defendant's contention that plaintiff must be deemed guilty of contributory negligence as a matter of law has been rejected by two competent and experienced trial judges: Hon. John F. Wahlquist in refusing to grant a motion for summary judgment; and Hon. Calvin Gould in rejecting defendant's motion and submitting the cause to a jury, and again in his refusal to grant a new trial.[5] Moreover, the verdict of the jurors rejecting the defendant's argument was unanimous.

It is appreciated that an ad hominem argument, based on the number of persons who believe a proposition, may ordinarily seem to have little weight as a matter of logic, because many people can be and often are in error. Yet in an admittedly close case such as this, where a consideration underlying the issue of law is what reasonable minds might believe that reasonable persons might do, it seems proper to give at least some attention to what other presumably reasonable minds have thought about the problem. This is particularly so in this case where the critical question is in the final analysis not really a question of law, but a question of fact as to the care of ordinary persons.

On that question the jurors, being people from various walks of life, and having different points of view, have a special advantage and should be just as competent to judge such a matter of everyday conduct as any lawyer, judge or justice. If we indulge the presumption, as we should, that the trial judges and jurors performed their duties honestly and conscientiously, it does not seem amiss to regard their collective judgment as lending support to plaintiff's argument that it is not proved that her conduct was wholly outside what an ordinary, reasonable and prudent person might have done under the particular circumstances.

After most any accident has happened, including this one, it seems to be human nature to see by hindsight how easily it could have been avoided. We are prone to blame carelessness, and to say it never would have occurred had the person been using the care of an "ordinary prudent person." With this mystical person we are likely, perhaps subconsciously, to indulge in self-projection into the situation. But giving recognition to the important right of trial by jury [6] requires that judges strive

---

5. See Geary v. Cain, 69 Utah 340, 255 P. 416, wherein this court assigned as a reason supporting the sustaining of a judgment that the trial court had passed deliberately on the question and also in refusing to grant a new trial. See also Powers v. Taylor, 14 Utah 2d 152, 379 P.

2d 380; Schneider v. Suhrmann, 8 Utah 2d 35, 327 P.2d 822.

6. As to my views on the importance of honoring this right see my dissent in Barnett v. State Auto and Casualty Underwriters, 26 Utah 2d 169, 487 P.2d 311, and authorities cited therein.

for a high degree of objectivity and realize that ordinary, reasonable care is not necessarily perfect conduct, nor even what they think their own would have been, and to make allowance for the fact that other reasonable persons may see as within the concept of reasonable care some variance from that conduct which from one's own point of view may seem to have been the most prudent thing to have done.[7]

In accordance with what I have said herein, it is my opinion: (1) that on the state of the evidence there is justification for the jury remaining unpersuaded that the plaintiff failed to use the degree of care which an ordinary, reasonable and prudent person would have observed under the circumstances; (2) concomitantly, that each of the district judges ruling thereon was justified in rejecting defendant's contention to the contrary, and in ruling that the issue should be submitted to the jury; and (3) it impresses me as arbitrary and unreasonable for this court to now rule that the actions of the two district judges, and the unanimously-acting jurors, are so outside the realm of reason that no reasonable persons could so conclude, and to thus deprive the plaintiff of her right to trial by jury and

take from her a verdict which I think in all fairness she is entitled to. Accordingly, I cannot join in doing so, but would affirm the judgment. (All emphasis added.)

TUCKETT, J., concurs in the dissenting opinion of CROCKETT, J.

---

7. There is cogency and wisdom in the recent statement of Chief Justice Burger concerning judicial restraint, which, though expressed in a different context, has application here: "The highest judicial duty is to *recognize the limits on judicial power* and to permit the democratic processes to deal with matters

falling outside of those limits" in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, decided on June 29, 1972; from my own point of view, trial by jury, by which the law functions through and thus keeps close to the people, is also part of the democratic processes.