Phyllis Fletcher MALTBY, Plaintiff
and Appellant,

v.

COX CONSTRUCTION COMPANY, INC.,
Lonnie Arthur Pritchard, and Mrs. Lorraine Kimball, Defendants and Respondents.

No. 15833.

Supreme Court of Utah.

July 3, 1979.

Melvin G. Larew, Salt Lake City, for plaintiff and appellant.

Wendell E. Bennett, Salt Lake City, for Cox Const. Co., Inc. and Lonnie Arthur Pritchard.

David W. Slagle, Salt Lake City, for Lorraine Kimball.

WILKINS, Justice:

Plaintiff brought action for personal injuries and property damage arising out of a motor vehicle collision. The case was tried before the District Court, Salt Lake County, sitting with a jury. From judgment of no cause of action entered on the jury's verdict, and the denial of her motion for a new trial, plaintiff appeals.

Affirmed. Costs to defendants. All statutory references are to Utah Code Annotated, 1953, as amended.

Interstate Highway 15 (I–15) is comprised of four southbound lanes just outside Salt Lake City until, at approximately 2400 South Street, the eastern two lanes of I–15 veer eastward into Interstate Highway 80 (I–80) and the other two lanes continue southward as I–15.

On June 21, 1974, at approximately 4:00 p. m., as traffic on the freeways started to become heavy with homeward bound travelers, Defendant Kimball, intending to go southward on I–15, found herself in the second eastern lane, and heading toward I–80. Unable to merge into the lane to her right because of the heavy traffic, Kimball pulled into the graveled area between the two diverging freeways, came to a stop on what becomes the left shoulder emergency lane of I–15, and waited for an opportunity to merge into the I–15 traffic.

Plaintiff was traveling in the second lane on the west, two or three cars behind the Kimball vehicle. She testified that Kimball suddenly and unexpectedly cut in front of her across the dividers between the I–80 lanes and the I–15 lanes, causing her to make an emergency stop to avoid a collision.[1] All other observers testified that Kimball came to a complete stop outside the traveled lanes, and that plaintiff stopped one or two car lengths behind the Kimball vehicle, but in the traveled lane.

Defendant Pritchard, an employee of Defendant Cox Construction Company, was driving a semitrailer loaded with 80,000 pounds of sand and was traveling behind plaintiff at approximately 45 miles an hour. As Pritchard came over a crest in the freeway, approximately 500 feet north of the point where these lanes diverge, he observed plaintiff's vehicle slowing and coming to a stop in his lane. Unable to enter the lane to his right because of the presence of a pick-up truck in that lane, Pritchard applied both foot and engine brakes, shifted his gears down, and swerved to the right. The truck hit the rear tail light of plaintiff's car at less than 10 miles per hour.

Plaintiff introduced no evidence of medical expenses nor expenses related to the damage of her car, but relied on the testimony of a forensic pychiatrist, Doctor Jack L. Tedrow, who testified that the collision had caused traumatic neurosis in plaintiff characterized by extreme fears, social withdrawal and depression, with an emphasis on her own aches and pains (hypochondriasis) to the extent that she was 25 percent disabled, unable to do simple household chores, and became hyperventilated in traffic situations and in crowds of people.

Defendants introduced evidence that plaintiff had been involved in two previous automobile accidents, one in 1964 for which she claimed disability from her own insurance company, and another in 1970, for

---

1. Plaintiff also testified, however, that Kimball stopped long enough for plaintiff to write down her license number.

which she brought action for damages, claiming 30 percent disability for the same symptoms of traumatic neurosis claimed in here.[2] Plaintiff has not held a job since 1964.

Defendants called Doctor Thomas Noonan, an orthopedic surgeon, who testified that based upon his physical examinations of plaintiff, and his examination of x-rays taken of her spine in 1971, 1974 and 1976, it was his opinion that her permanent impairment of movement pre-existed the collision of June, 1974, the subject matter of this action.

Plaintiff called a Mr. Lord, an "accident reconstructionist," who testified that from his calculations that Defendant Pritchard should have been able to stop his truck within 200 feet on this particular surface. He agreed that his calculations depended upon successfully having all wheels in a locked or skid position. He testified that the truck could be stopped in the same distance as plaintiff's passenger car. Defendant Pritchard called Defendant Kimball's husband, Don Kimball, who testified that he had been driving a truck as his occupation for 35 years, during which time he had also driven passenger automobiles. He testified that in his experience he had found it impossible to stop a tractor hauling an 80,000-pound load on a 2 percent downgrade within 200 feet, for the reason that it is impossible to get all 18 wheels into skid position within the few seconds it takes to cover that distance. He testified that the truck could not be stopped in the same distance as the passenger car.

Special Interrogatories were submitted to the jury pursuant to Rule 49(a), Utah Rules of Civil Procedure, and in its answers thereto, the jury found neither Defendant Kimball nor Defendant Pritchard negligent; found plaintiff 100 percent negligent; found that her negligence was the proximate cause of the collision; and found that plaintiff had suffered no damages.

Plaintiff first argues that both defendants were negligent as a matter of law, and the Court erred in finding each defendant entirely free from negligence, and in entering judgment based on those findings.

■ It must be observed that, as this was a *jury* trial, the Court made no such findings of fact. Further, issues of fact are within the province of the jury, and this Court will not substitute its judgment for that of the jury where its verdict is supported by substantial credible evidence.[3]

Plaintiff contends that Defendant Kimball was in violation of Section 41–6–103[4] when she stopped in the emergency lane of the freeway, and being in violation of a state statute, Kimball was therefore negligent as a matter of law. Plaintiff relies on *Gibbs v. Blue Cab,* 122 Utah 312, 249 P.2d 213 (1952) for this proposition, and asserts as error, the Court's failure to instruct the jury on this theory.

■■ No instructions concerning negligence per se were requested by plaintiff, and the statute in question was not brought to the attention of the Court. Likewise, no exceptions to the Court's instructions given on the issue of Kimball's alleged negligence were taken by plaintiff, and she cannot

---

2. Including the loss of a boyfriend, whom plaintiff intended to marry, resulting from her social withdrawal, claimed in both actions.

3. *Barlow Upholstery & Furniture Co. v. Emmel,* Utah, 533 P.2d 900 (1975); *Uinta Pipeline Corp. v. White Superior Co.,* Utah, 546 P.2d 885 (1976); *Fuller v. Zinik Sporting Goods Co.,* Utah, 538 P.2d 1036 (1975); *Page v. Utah Home Fire Ins. Co.,* 18 Utah 2d 210, 418 P.2d 231 (1966).

4. That Section provides:
   (a) No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or traffic-control device, in any of the following places:

   \* \* \* \* \* \*

   (15) Upon the outside or inside shoulder area of any designated interstate highway unless the action is necessitated by the mechanical failure or malfunction of the vehicle or the physical distress of the driver to an extent that the safety of the driver or others upon the highway would otherwise be impaired.

**340**

claim error for the first time on appeal.[5] Further, a finding of *some* negligence on the part of Kimball based on the violation of this statute would not be helpful to plaintiff, for, pursuant to our comparative negligence statute,[6] the jury must find that she was more than 50 percent negligent, or plaintiff cannot recover. And we do not believe that any such error, assuming *arguendo* that there was one, was prejudicial to plaintiff where the jury also found that plaintiff had sustained no damages.

■ Plaintiff argues that Pritchard was also negligent as a matter of law, and relies on the case of *Brock v. Ward*, 28 Utah 2d 303, 501 P.2d 1207 (1972). The rule applied in that case had its genesis in *Dudley v. Mid-Western Dairy*, 80 Utah 331, 15 P.2d 309 (1932), and is sometimes referred to as the "look, see and heed" rule.[7] The *Brock* case has no application here, as Pritchard testified that he saw the car in his path, and took immediate action to avoid it.

Plaintiff next contends that the Court erred in refusing her requested instruction No. 9 with regard to the alleged negligence of Pritchard. That instruction states:

> You are instructed that the fact that a driver of a vehicle collides with a rear-end on another vehicle stopped or slowing on the highway in front of him, furnishes some evidence that such defendant driver was either driving at too high a rate of speed or was following too closely.

■■ This requested instruction is tantamount to an instruction that rear-end collisions are invariably the result of the negligence of the driver of the following vehicle. The instruction was properly refused. The Court properly instructed the jury as to the duties and responsibilities of each of these parties to keep a proper lookout, to keep their respective vehicles under proper control, and to use such care as a reasonable prudent person would use under the circumstances. The jury was persuaded that Pritchard's actions were reasonable under these circumstances, and that plaintiff's were not. As there is substantial credible evidence on which to base these findings, the jury's verdict will not be disturbed.[8]

■ Plaintiff also contends that the Court erred in allowing Don Kimball to testify, rebutting the testimony of her expert witness, Mr. Lord, over the objection of the plaintiff. Her contention is that Kimball was not sufficiently qualified as an expert witness on the subject of the stopping distances of the particular truck in question. It is largely within the discretion of the trial judge to pass on the qualifications of a witness as to whether he can give sound and reliable help to the jury with regard to subjects within his expertise.[9] The knowledge of such a witness may have been acquired through formal education and study, but may also have been acquired through experience.[10] The rulings of the District Court on the admissibility of such testimony are not lightly disturbed on appeal, nor at all, unless it clearly appears that the judge was in error. Here, the witness was qualified through experience to testify with regard to this issue, and the Court did not abuse its discretion in that respect.

Plaintiff contends that the District Court erred in the voir dire of the jury by not inquiring of the veniremen upon the request of plaintiff as to whether they had read certain articles in *Time* and *Newsweek* magazines concerning increases in insurance premiums due to large awards returned by juries in traumatic neurosis cases.

---

5. Rule 51, Utah Rules of Civil Procedure; *Jensen v. Eakins*, Utah, 575 P.2d 179 (1978).

6. § 78-27-37, et seq.

7. See the dissenting opinion of Justice Crockett in *Brock, supra; Durrant v. Pelton*, 16 Utah 2d 7, 394 P.2d 879 (1964).

8. See cases cited at note 3, *supra*.

9. *Webb v. Olin Mathieson Chemical Corp.*, 9 Utah 2d 275, 342 P.2d 1094 (1959).

10. *Id.*

Plaintiff contends that the jury may have been prejudiced against her because they had read such articles.

Matters of possible bias and prejudice on the part of the jury are within the sound discretion of the trial court, and its rulings on whether to question veniremen with respect thereto will not be disturbed on appeal unless it is demonstrated that the Court abused its discretion. As plaintiff has not provided this Court with copies of the suspect articles, nor even with their date of publication, it would be pure conjecture on our part to rule that the articles might have been prejudicial to plaintiff's case.

Plaintiff contends that the District Court erred in refusing her requested instruction No. 24, regarding the triggering of traumatic neurosis in a person with a predisposition for neurosis. Other instructions given by the Court, however, more than adequately covered the subject matter, and the Court did not err in refusing this particular instruction, as it was repetitive, and the legal basis for that requested instruction is questionable.

Finally, plaintiff argues that her trial counsel (she engaged the services of a different attorney for the purposes of this appeal) was incompetent, in that trial counsel (1) failed to offer evidence of plaintiff's special damages, (2) failed to request an instruction on negligence per se, (3) failed to offer an instruction concerning the lower standard of care plaintiff is held to when in an emergency situation.[11] It appears from the record, that plaintiff's trial counsel proceeded upon certain assumptions and theories, which plaintiff's appellate counsel now, in retrospect, disagrees with. Such disagreements do not constitute incompetence, but merely a difference in trial tactics. Plaintiff has not demonstrated that had her counsel followed different theories, that the jury's verdict would have been different.

And while incompetence of counsel may be a ground for granting a new trial in a

criminal case where the defendant's life and liberty are at stake, this Court has never, to our knowledge, granted a new trial on such a ground in a civil action. I would adopt the position of the Oklahoma Supreme Court as stated in the case of *Wilson v. Sherman,* 461 P.2d 606 (1969):

While perhaps as an abstract proposition of law it may be possible to grant a new trial in civil litigation upon the ground that one of the parties was prevented from having a fair trial because of alleged negligence on the part of his attorney, we know of no such rule having been recognized in this, or any other jurisdiction for that matter. Defendants cite no cases. Furthermore, it would seem unfair and harsh to thus penalize the other side in the litigation by requiring him to again present his cause to another jury in a new trial.

Plaintiff has had her day in court, and she has not shown prejudicial error occurring at the trial which would warrant a new trial.

MAUGHAN, J., concurs.

CROCKETT, Chief Justice (concurring with reservation).

I concur, but add the following comments. The main opinion stresses the thought that while incompetence of counsel may be a ground for nullifying a judgment in a criminal case, it has not been done and therefore should not be done in a civil case. The statement seems too broad and inclusive. The purpose of all court proceedings is, of course, to do justice. If the processes have so clearly gone awry that an injustice has resulted, the court in charge of the trial, or this Court on review, should rectify such an unfortunate occurrence, whether the proceeding is criminal or civil.

In so saying, I am aware that it is generally said that mistake, error of judgment or negligence of counsel in presenting or defending a case is not sufficient cause of vacating a judgment and granting a new

---

11. An instruction concerning the lower standard of care in an emergency situation applying to all parties, generally, was given by the Court.

trial.[1] However, consistent with the principle stated above, it has been held that, under exigent circumstances, incompetence or negligence of counsel which appears to have resulted in an injustice, will justify the granting of a new trial.[2] It is therefore my view that in determining whether relief should be granted the matter of critical concern should not be as to the nature of the proceeding, but whether there is such a strong likelihood that an injustice has resulted[3] that good conscience requires it to be remedied.

It is further pertinent to observe that it is not necessary to announce any such broad rule as does the main opinion. This is so because, as the opinion indicates, the plaintiff did not demonstrate that there was a reasonable likelihood that the verdict would have been different. In that connection, any question as to the competency of plaintiff's trial counsel was properly addressed to the trial court; and his denial of the motion for a new trial should be affirmed in the absence of a showing of abuse of discretion.[4] The opinion is therefore correct in concluding that the plaintiff "has not shown prejudicial error . . . which would warrant a new trial."

HALL and STEWART, JJ., concur in the views expressed in the concurring opinion of CROCKETT, C. J.

---

1. 66 C.J.S. New Trial Section 82b.

2. *Garrett v. Osborn,* 164 Colo. 31, 431 P.2d 1012 (1968).

3. *Id.* at 1013.

4. See *Hetrick v. Dame,* Colo.App., 536 P.2d 1153 (1975).