In re the **MARRIAGE OF Carol M. FORD, Petitioner-Appellant,**

and

**Gregory L. Ford, Respondent-Appellee.**

No. 3–184A25.

Court of Appeals of Indiana,
Third District.

Nov. 7, 1984.

Rehearing Denied Jan. 24, 1985.

Victor L. McFadden, South Bend, for petitioner-appellant.

Edward Olczak, South Bend, for respondent-appellee.

GARRARD, Judge.

On September 10, 1982 Carol M. Ford (the wife) filed a petition for the dissolution of her marriage to Gregory L. Ford (the

husband). On August 31, 1983 the St. Joseph Superior Court entered judgment dissolving the marriage and granting custody of the couple's two minor children to the husband. The wife now appeals raising four issues for our review, which we restate as follows:

I.  Whether the wife should be granted a new trial due to the ineffectiveness of her counsel at the first hearing held on the petition for dissolution.

II. Whether the court erred by restricting the scope of the wife's testimony at an evidentiary hearing held subsequent to the final hearing.

III. Whether the court erred by rejecting an agreement submitted by the parties.

IV. Whether the court's award of custody of the couple's two minor children to the husband constituted an abuse of discretion.[1]

A brief outline of the procedural history of this cause will help elucidate our discussion of the issues.

The record reveals the court set June 13, 1983 as the date for the final hearing of this cause. The hearing began with a statement from the wife's attorney, Harry Heppenheimer, stating that he and the husband's attorney had arrived at a tentative agreement subject to the court's approval. The agreement, as stated by the wife's attorney, provided that: The wife would advocate joint custody under IC 31–1–11.5–21(g) without opposition from the husband, the marital residence would be used by the husband for three years after which time the house would be sold, the proceeds of sale to be divided equally; there would be no maintenance order "... and there would be no support ordered in that [the wife] is unemployed at this time," Record at 182; personal property would be divided as agreed although the award of two items remained unresolved; the husband would pay the wife's counsel $250 in attorney's fees; the wife would have specific visitation rights; and the wife's maiden name would be restored.

The wife was called as a witness and testified that she was a resident of St. Joseph County, that the parties had two minor children, that they had separated and that their marriage was irretrievably broken down. She asked that the court approve the proposed property settlement. She answered in the affirmative when asked by her attorney whether she understood that her husband was "to have temporary custody of the children subject to conceivably the Court's application of the joint legal custody [doctrine] as set out by that statute ...." Record at 189. On cross-examination she indicated she was aware the court in making its custody order would consider a child custody study which had been conducted.

The husband also testified about the breakdown of the marriage and the provisions he had made for the care of the children. He agreed the proposed settlement was fair and equitable.

At the close of the hearing, the court found the marriage was irretrievably broken and ought to be dissolved, took under advisement the matter of the division of the property, and found the custody of the children should be awarded to the husband without provision for joint custody.

On June 22, 1983, the wife filed a petition asking the court to reconsider its custody finding, alleging that the child custody report submitted by the Domestic Relations Counselling Bureau was incomplete. The court denied the petition.

---

1. The wife's brief does not contain a verbatim statement of the judgment as required by Indiana Rules of Procedure, Appellate Rule 8.3(A)(4). On the basis of this defect alone, we could disregard the merits of this appeal and affirm the judgment below. *Suess v. Vogelgesang* (1972), 151 Ind.App. 631, 281 N.E.2d 536. In *Suess,* the appellate court overlooked such a defect due to the fact the judgment was but one sentence long and had been included in the appellee's brief. Here, on the contrary, the judgment covers more than two pages and was not provided by the husband's brief. Nonetheless, while we are inconvenienced by the wife's oversight, we are not so hampered that we would exact the price of waiver.

On July 7, 1983, the court granted Heppenheimer leave to withdraw as counsel for the wife. The following day, Victor McFadden made his first appearance on the wife's behalf. On August 9, 1983, he argued to the court that Heppenheimer had thought the court's findings of June 13, 1983 only granted temporary custody to the husband. He further argued the award of permanent custody was contrary to the proposed agreement and was not supported by sufficient evidence. McFadden also discussed the yet unresolved property division. The court agreed to set the cause for further hearing.

On August 18, 1983, the hearing was held and testimony was first offered by Sarah Steel, the counselor who had prepared the child custody report, and then by the wife and the husband. The court sustained the husband's objection to the wife's testimony concerning the custody issue. The court stated it would limit the wife's testimony to rebuttal of the statements made by Steel and to evidence concerning the two items of property left unresolved by the testimony at the June 13, 1983 hearing.

The court entered judgment on August 31, 1983, granting custody of the children to the husband, awarding the marital home to the husband, awarding the personal property to the party then in possession, granting the wife reasonable visitation and restoring the wife's maiden name.

## I. Ineffective assistance of counsel.

The wife contends the ineffectiveness of her counsel at the first hearing denied her a fair trial, particularly in relation to the custody issue. She seeks a new trial asking this court to apply the "mockery of justice" standard to review her case as we would a criminal case. *See Hemphill v. State* (1984), Ind., 461 N.E.2d 126.

We have found no Indiana case considering the issue of ineffective assistance of counsel as a ground for a new trial in the civil context. However, other jurisdictions have addressed the issue with near unanimity that no such relief should be granted. The holdings of these cases can best be summarized in the statement of the Arizona Supreme Court in *King v. Superior Court* (1983), 138 Ariz. 147, 673 P.2d 787 "that a party's mere dissatisfaction with his own counsel or allegations of his own counsel's neglect, inadvertence, or mistake do not justify the granting of a new trial in civil cases." 673 P.2d at 791. *See also Andrea Dumon, Inc. v. Pittway Corp.* (1982), 110 Ill.App.3d 481, 66 Ill.Dec. 148, 442 N.E.2d 574; *Engelbrechten v. Galvanoni & Nevy Bros., Inc.* (1969), 60 Misc.2d 419, 302 N.Y.S.2d 691; *Wilson v. Sherman* (Okla.1969), 461 P.2d 606; *Scheffer v. Chron* (Tex.Civ.App.1977), 560 S.W.2d 419; *Maltby v. Cox Construction Company, Inc.* (Utah 1979), 598 P.2d 336, *cert. denied* 444 U.S. 945, 100 S.Ct. 306, 62 L.Ed.2d 314. The theory of the court in *Scheffer v. Chron, supra,* was that the client should be held responsible for the failure of counsel to properly develop available evidence at trial. Indiana cases reflect a similar position in the context of attempts to set aside default judgments, holding that the negligence of an attorney should be imputed to the client. *Rose v. Rose* (1979), 181 Ind.App. 98, 390 N.E.2d 1056; *Moe v. Koe* (1975), 165 Ind.App. 98, 330 N.E.2d 761.

The only case we have found reversing the judgment of the trial court and remanding for a new trial based on the incompetence of counsel is *Garrett v. Osborn* (1967), 164 Colo. 31, 431 P.2d 1012. In *Garrett,* the plaintiff, having received an adverse judgment, moved for a new trial based on the inadequacy of his legal representation. The Colorado Supreme Court, in reversing the lower court's denial of that motion, stated:

"Examination of the full record shows conclusively that the lawyer purporting to represent Garrett utterly failed to adequately represent his interest in the controversy.... The shortcomings in the conduct of counsel for Garrett are so flagrant and so numerous that a fair trial of the case was denied his client. When lack of adequate representation was made a ground for granting a motion for a new trial, and the court found as a fact that Garrett's case was not adequately

presented, a new trial should have been granted.

"There can be no doubt that the substantive rights of Garrett were adversely affected by the palpable malfeasance, misfeasance and nonfeasance of his counsel."

431 P.2d at 1013.

Two other courts, while not granting a new trial in the particular case, have recognized that such relief might be granted where clear injustice has resulted from the incompetence of counsel. *See Jennings v. Stoker* (Utah 1982), 652 P.2d 912; *Maltby v. Cox Construction Company, Inc.* (Utah 1979), 598 P.2d 336 (Crockett, C.J., concurring), *cert. denied* 444 U.S. 945, 100 S.Ct. 306, 62 L.Ed.2d 314.

■ We, however, agree with the majority of the decisions which have denied the remedy of a new trial where a party contends the incompetence of his or her counsel has impinged upon the party's right to a fair trial. As was the majority of the Utah Supreme Court in *Maltby, supra,* we are persuaded by the language used by the Oklahoma Supreme Court in *Wilson v. Sherman* (Okla.1969), 461 P.2d 606, 610:

"While perhaps as an abstract proposition of law it may be possible to grant a new trial in civil litigation upon the ground that one of the parties was prevented from having a fair trial because of alleged negligence on the part of his attorney, we know of no such rule having been recognized in this, or any other jurisdiction for that matter. Defendants cite no cases. Furthermore, it would seem unfair and harsh to thus penalize the other side in the litigation by requiring him to again present his cause to another jury in a new trial."

■ Assuming Heppenheimer was negligent in his representation of the wife, the wife seeks to have the husband shoulder the burden of that negligence by forcing him to relitigate issues already fully considered by the court. In criminal prosecutions, we routinely consider claims of incompetence of counsel. There the grant of a new trial to a defendant is a burden on the state but is nonetheless a burden necessarily accepted by the state consistent with the constitutional guarantee that a criminal defendant will be afforded the effective assistance of counsel. U.S. Const., amend. sixth and fourteenth.

■ We are sympathetic to the wife's displeasure with the custody arrangement. Likewise we understand the distinction she draws between suing an attorney for damages where only a monetary loss has been suffered and suing where custody of one's children has been lost. However, she has not convinced us that an unfavorable custody order should be reviewed as we would a criminal case. We believe the only equitable result as between the wife and the husband is for her to suffer the consequences of any errors of judgment made by the attorney she hired.

■ In any event, the record does not disclose negligence or incompetence of counsel. Heppenheimer's statement to the court at the beginning of the June 13, 1983 hearing as to the tentative agreement of the parties revealed that the wife had consented to an award of custody of the children to the husband. The alleged agreement outlined the wife's visitation rights and asked that the court not impose any support obligation upon her, two conditions indicating her acquiescence to the husband having custody.

The wife argues that she thought the court's custody determination would be temporary, a position possibly corroborated by one answer she gave at the hearing, and that Heppenheimer should have taken some action to protect her interests once he realized the court was not going to follow the proposed agreement.

However, it is clear from the record that the hearing was to be the final hearing on the wife's petition for dissolution. It also can be inferred from the detail and completeness of the tentative agreement that the wife thought the agreement would be

incorporated into the court's final order.[2] Furthermore, contrary to the wife's contention that the agreement was falling apart, it appears the court followed the parties' wishes, except perhaps by granting the marital residence to the husband without limitation, a result about which the wife cannot complain since the evidence showed there was no equity in the house. The wife shows no other discrepancies.

What the wife characterizes as a claim for ineffective assistance of counsel appears to be a reconsideration by the wife of her position on the custody of the children after the final hearing. Heppenheimer adequately represented the wife's interests at the time of the final hearing but those interests apparently changed thereafter. Accordingly, even if we did recognize the possibility of granting a new trial due to the ineffectiveness of counsel in a civil suit, the wife has failed to prove such shortcomings here.

*II. Limiting testimony at the subsequent hearing.*

The wife contends the court denied her a fair trial

"... by refusing to permit her to reopen the case to permit her to present evidence as to her fitness as a mother, and to permit her to introduce evidence as to the fair market value of the marital residence."

Brief at 15. She offers no citation to authority to support her position.

█ It is clear that the court has the power to reopen a cause for the presentation of additional evidence and that the court's decision in this regard will be disturbed only if there is a clear abuse of discretion. *Terry v. Terry* (1974), 160 Ind. App. 653, 313 N.E.2d 83. It would seem equally true that a court's decision to hear additional evidence does not require the court to retry every issue covered in the original hearing. The scope of the additional hearing should be equally within the sound discretion of the court.

█ Here, the court in granting the additional hearing said, "You want a hearing on all of it, you'll get it, and you can start tomorrow." Record at 220. However, we do not interpret this to mean the court was committing itself to a complete retrial of the issues. At the subsequent hearing the court chose to restrict the wife by allowing her to cross-examine the counselor who had prepared the child custody report, to testify in rebuttal to the counselor's report and to offer evidence concerning items of personal property the disposition of which had not been determined at the first hearing. The wife's testimony was not restricted by the court in any way at the first hearing. She has not shown an abuse of discretion because of the restrictions imposed at the subsequent hearing.

*III. Tentative agreement of the parties.*

█ The wife contends the court erred by rejecting the agreement submitted by the parties. IC 31–1–11.5–10 provides:

"(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree *in writing* to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children." (our emphasis)

The record contains no written agreement of the parties although there were repeated references to such an agreement throughout the final hearing. The wife therefore has shown no error.

█ Even had the agreement been properly submitted to the court in writing, the court had the discretion to accept, modify or reject the agreement in whole or in part. *Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157. While the wife is correct in stating that the court's discretion in this regard is not unlimited, *see Stockton v. Stockton*

---

**2.** We are hampered somewhat by our necessary reliance on Heppenheimer's opening statement for clues as to the substance of the alleged agreement. No written agreement appears in the record.

(1982), Ind.App., 435 N.E.2d 586, it is nonetheless her burden to show an abuse of discretion. *Id.*

She has not shown an abuse of discretion. The only way the court's order diverges from what we can glean to be the tentative agreement of the parties is by awarding the marital residence to the husband without limitation. Under the agreement, the husband would have had the use of the residence for a period of three years after which the house would have been sold and the proceeds divided equally between the parties. The court's decision has a rational basis because the balance owed on the house exceeded the value of the house. Awarding the house to the husband for only three years and then having the house sold would have gained nothing for the wife and would have infused unnecessary instability into the life of both the parties and the children. The wife again has failed to establish error.

*IV. Custody order.*

■ The wife finally contends the court abused its discretion by awarding custody of the couple's children to the husband. She contends the court failed to make specific findings which she alleges are required to be made pursuant to IC 31-1-11.-5-21.[3] However, the statute only requires that the court *consider* all relevant factors. Specific findings on each of the listed factors are not required.

■ Because specific findings were not requested pursuant to TR 52(A),[4] we will reverse the court's custody determination only if that determination is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences to be drawn therefrom. *Williams v. Trowbridge* (1981), Ind.App., 422 N.E.2d 331.

■ As of the date of the final hearing, the apparent wish of both parties was to have the court award custody of the children to the husband. The child custody report, as evidenced by the testimony of the counselor, Sarah Steel, also recommended that the court award custody to the husband. At the hearing, the husband testified as to the provisions he had made for the care of the children. For whatever reason, the wife offered no testimony as to her fitness to have custody.

The evidence supports the court's conclusion. Finding no error, we accordingly affirm the judgment of the trial court in all respects.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

---

3. The statute provides, in part:
   "(a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:
   (1) the age and sex of the child;
   (2) the wishes of the child's parent or parents;
   (3) the wishes of the child;
   (4) the interaction and interrelationship of the child with his parent or parents, his sib-
   lings, and any other person who may significantly affect the child's best interests;
   (5) the child's adjustment to his home, school, and community; and
   (6) the mental and physical health of all individuals involved."

4. The wife made only an oral request for specific findings of fact. TR 52(A) requires that the request be in writing and be filed prior to the admission of evidence. *See Van Orman v. State* (1981), Ind.App., 416 N.E.2d 1301.