Andy **RUKAVINA**, Plaintiff and Appellant,

v.

**TRIATLANTIC VENTURES, INC.; Michael Wright; Julie Nelson; Commercial Security Bank; American Registrar and Transfer Co.; Gregory Kelly; Carol Sweat; Video Shopping Mall, Inc.; Russ Nielson; and Crystal Yanotti, Defendants and Appellees.**

No. 950172.

Supreme Court of Utah.

Jan. 10, 1997.

---

M. Shane Smith, Budge W. Call, Salt Lake City, for Rukavina.

Paul T. Moxley, Robert E. Mansfield, Salt Lake City, for Wright.

Kenneth W. Yeates, Phyllis Vetter, Salt Lake City, for Nelson, Commercial Security Bank.

Peter W. Guyon, Richard M. Day, Salt Lake City, for American Registrar & Transfer.

HOWE, Justice:

Plaintiff Andy Rukavina appeals from the trial court's judgment of no cause of action in favor of defendants Triatlantic Ventures, Inc., Michael Wright, Julie Nelson, Key Bank (formerly Commercial Security Bank), American Registrar and Transfer Co. (ARTCO),

and five additional defendants who are not parties to this appeal. He also appeals from the denial of his motion for a new trial.

Before we recite the facts, we note the nature of the case. This lawsuit, with its melange of complaints, multiple defendants, and thousands of pages of documentation, is an action to recover a return of $1,875,000 on plaintiff's investment of $5,000, which return was allegedly generated through an illegal stock fraud scheme. The trial court found that the actual bargain between plaintiff and defendant Wright was for a 50% to 100% return on plaintiff's investment within three to four weeks. Thus, if this was the bargain and Rukavina received payment of $7,500 as the trial court found that he did, all of his complaints against all defendants are extinguished for lack of a legal injury. We therefore begin by reciting only such facts as relate to (1) what was the bargain, (2) whether plaintiff received the benefit of his bargain, and (3) whether plaintiff received a fair trial.

## FACTS

Wright and Rukavina agree that on or about November 15, 1985, Rukavina, through his agent and fiancee Eloise Barney, who was also Wright's employee, gave Wright a check for $5,000 with the payee line left blank to invest in a new venture which Wright was helping to finance. Wright used the $5,000 to buy stock in Triatlantic Corporation, and instructed Barney to fill out the check accordingly. Certificates for 500,000 shares of Triatlantic common stock and 500,000 A & B warrants were issued in Rukavina's name on an unspecified date by ARTCO. Rukavina testified that Wright also invested $5,000 in Triatlantic at the same time and agreed that he would sell his and Rukavina's shares together when their value increased, promising Rukavina a return of from $60,000 to $80,000. However, Wright testified that if any mention were made of such a return, it was merely sales talk or puffing and that the agreement was for a 50% to 100% return

within three to four weeks, consistent with their prior dealings. Rukavina's shares were transferred out of his name on June 19, 1986.

Rukavina brought this action for damages of $1,875,000 for the value of his stock and also for double compensatory damages, punitive damages, legal fees, and interest. He alleged that Wright was embroiled in a stock fraud scheme involving an unfunded shell corporation, nominee officers, and a sham public offering through which he sold Rukavina's stock for $1.25 per share.[1] His second amended complaint described what he referred to as a "sting" operation in which "stocks of these purportedly 'public' companies were sold to unwitting victims." He alleged names, events, methods of operation, and violations of law. In the action before us, Wright denied both the scheme and the generation of inflated profits, although he allegedly admitted to involvement in such a scheme in a plea agreement entered in *United States v. Wright,* brought in the United States District Court of Nevada.

The trial court found that Rukavina and Wright entered into an oral contract that in return for Rukavina's $5,000 investment, which was to be used to buy an unspecified amount of securities in an unspecified corporation, Rukavina would receive $7,500 in three to four weeks. According to Wright's testimony, Rod Goodman, one of the principal promoters of Triatlantic, bought Wright's own shares and Rukavina's shares by giving Wright cash for his shares and giving Barney cash for Rukavina's shares. Rukavina denied receiving any payment. Barney likewise denied that Rukavina received anything in return for his investment. Neither party specifically questioned Barney as to whether *she* received any payment in Rukavina's behalf. Thus no one denied that Barney received the payment. The trial court found that Barney received $7,500 in Rukavina's behalf and accordingly dismissed all claims not previously dismissed on summary judgment. Rukavina moved for a new trial on the basis that irregularity of the proceedings and various omissions on the part of his trial

---

**1.** Rukavina's complaint alleges that "the conspirators caused Plaintiff's stock to be sold utilizing the forged guaranteed blank stock power and the original stock certificates comprising: 500,000 common stock certificates and 500,000 A & B warrants, to be sold for what Plaintiff is informed and believes to be $1.25 per share resulting in a sales price of $1,875,000."

counsel prejudiced his case before the trial court. Such omissions and irregularities included his counsel's failure to attend the deposition of potential witness Gail Finnas, failure to call Finnas and Goodman as witnesses, and his counsel's motion to withdraw due to his concern that Rukavina would commit perjury. The court denied the motion.

Rukavina appeals contending that (1) the trial court improperly dismissed certain claims on summary judgment, (2) the evidence was insufficient when marshaled to support the trial court's findings that he signed the stock powers authorizing transfer of his stock and that he received the $7,500 payment, (3) the trial court abused its discretion in failing to grant Rukavina's motion for a new trial, and (4) Rukavina was prejudiced by his own attorney's motion to withdraw three days before trial.

## ANALYSIS

The summary judgments dismissed claims grounded in the handling of the stock certificates and stock powers. Those claims are irrelevant if Rukavina received the $7,500 payment. The same rationale applies to his challenge to the trial court's finding that he signed the stock powers. Thus, we will first consider the other assignments of error.

### A. Sufficiency of Evidence

Rukavina contends that the factual finding that he received the $7,500 payment is not supported by the evidence. An appellate court gives great deference to a trial court's findings of fact. "We cannot overturn a trial court's factual findings unless they are clearly erroneous. Utah R. Civ. P. 52(a). A finding is clearly erroneous if it is 'against the clear weight of evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.'" *Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378 (Utah 1995) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)).

■ Plaintiff's brief makes the bald statement that "Eloise Barney did not receive any money for Rukavina's investment," unaccompanied by any relevant citation to the record.

An exhaustive search of the record before us fails to yield any support for plaintiff's assertion. Neither Barney, Rukavina, nor any other person testified that she did not receive the payment, although both Rukavina and Barney testified that *he* did not. Curiously, no one asked her if she received any payment for Rukavina. Consequently, Wright's testimony that Barney received the $7,500 cash payment was uncontroverted. Plaintiff must at least *offer*, for the trial court's consideration, *some* evidence in controversion of that testimony. A factual finding which comports with the *only* evidence—uncontroverted testimony—can hardly be "against the clear weight of evidence." Therefore, we are satisfied that the evidence was sufficient to support the trial court's finding that Barney received $7,500 in Rukavina's behalf. This conclusion necessarily renders irrelevant Rukavina's complaints as to the issuance and selling of his stock.

■ Additionally, Rukavina testified at trial, and states in the facts section of his brief, that Wright promised him a return of $60,000 to $80,000 on his $5,000 investment. In his brief, he makes the blanket statement that "[t]he marshalled [sic] evidence presented at trial is insufficient to support the trial court's findings of fact and conclusions of law." However he does not specifically brief, argue, or offer evidence to support a contention that the trial court erred in finding that the actual bargain was for a 50% to 100% return on his investment. "Issues not briefed by an appellant are deemed waived and abandoned." *American Towers Ass'n Inc. v. CCI Mechanical Inc.*, 930 P.2d 1182, 1185 n. 5 (Utah 1996) (citing *Pixton v. State Farm Mut. Auto. Ins. Co.*, 809 P.2d 746, 751 (Utah.Ct.App.1991)). Rule 24(a)(9) of the Utah Rules of Appellate Procedure provides that the argument section of a party's brief must contain "the contentions ... of the appellant ... with citations to the authorities, statutes, and parts of the record relied on." "A brief must contain some support for each contention," *State v. Wareham*, 772 P.2d 960, 966 (Utah 1989), and therefore, "[i]nasmuch as [Rukavina] has failed to properly brief this argument, we decline to address its merits."

*Walker v. U.S. General, Inc.*, 916 P.2d 903, 908 (Utah 1996).

### B. Motion for a New Trial

■ Rukavina moved for a new trial on the ground that he was prejudiced by his trial counsel's failure to call Finnas and Goodman as witnesses and to adequately prepare for trial by making "proper discovery" and obtaining the original stock power documents. The grant of a new trial is ordinarily left to the sound discretion of the trial court. *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 804 (Utah 1991). Under rule 59(a), Utah Rules of Civil Procedure, a new trial is permitted only upon certain grounds, including "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion by which either party was prevented from having a fair trial." Utah R. Civ. P. 59(a)(1). However, "[t]he general rule is that in civil cases a new trial will not be granted based upon the incompetence or negligence of one's own trial counsel." *Jennings v. Stoker*, 652 P.2d 912, 913 (Utah 1982). In *Maltby v. Cox Construction Co.*, 598 P.2d 336 (Utah 1979), *cert. denied*, 444 U.S. 945, 100 S.Ct. 306, 62 L.Ed.2d 314 (1979), we quoted with approval the position of the Oklahoma Supreme Court that

> While perhaps as an abstract proposition of law it may be possible to grant a new trial in civil litigation upon the ground that one of the parties was prevented from having a fair trial because of alleged negligence on the part of his attorney, we know of no such rule having been recognized in this, or any other jurisdiction for that matter.

*Id.* at 341 (citation omitted). We held in *Maltby* that "Plaintiff has had her day in court, and she has not shown prejudicial error occurring at the trial which would warrant a new trial." *Id.* Rukavina likewise has failed to demonstrate that the circumstances he complains of prejudiced the trial court's finding that his agent Barney received the $7,500 payment. Thus even if a new trial could be granted in a civil case for ineffective assistance of counsel, Rukavina does not qualify.

Finnas learned during the taking of her deposition that events from her past could be brought up at trial to challenge her credibility. She consequently recanted her earlier deposition testimony and statements made in a previous affidavit in order to avoid being called as a witness. However, Finnas's testimony, as evidenced by her affidavit and deposition, would have related only to procedures for guaranteeing signatures on stock powers and for transferring stock and would have had no effect upon the determination before us. Therefore, Rukavina was not prejudiced by his counsel's failure to attend Finnas's deposition or to call her as a witness. Moreover, since the stock transfer powers were unrelated to the lawful bargain which the trial court found that Rukavina and Wright made, it is irrelevant whether Rukavina signed them, and the production of the original documents at trial would have changed nothing. Finally, Rukavina suggests that various other stock-related documents should have been obtained through discovery but fails to demonstrate how these might have benefitted him or to show that their absence prejudiced him.

■ Moreover, his counsel's failure to call Goodman as a witness is problematic only if it influenced the trial court's finding that Barney received the $7,500 payment in Rukavina's behalf. Wright testified that he saw Goodman hand Barney the money. Therefore, Goodman's testimony might have been either valuable or damaging to Rukavina, depending upon its content. Nonetheless, Barney herself testified and was perfectly capable of contravening Wright's testimony, had anyone put the question directly to her. No one did, and Rukavina does not complain of that omission. Thus, we can only assume that the omission was knowing and deliberate, prompted by awareness that an honest answer would be unfavorable. We therefore conclude that failure to call Goodman, if error, was harmless to Rukavina.

### C. Prejudice Resulting from Attorney's Motion to Withdraw

■ Rukavina asserts that his trial counsel's motion to withdraw three days before trial damaged Rukavina's credibility and prejudiced the trial court. When counsel learned that Finnas had withdrawn her affidavit and was unwilling to testify, he became

concerned that if Finnas were called as a witness she, and perhaps even Rukavina, might commit perjury. He moved to withdraw as counsel, expressing these reservations and his fear of compromising his own ethical duty as an officer of the court. After further investigation, however, he concluded that his fears were unfounded. At the hearing on the motion to withdraw, he stated that he was no longer concerned about the possibility of perjury. He still desired to withdraw, however, due to procedural and financial frictions with plaintiff. The trial court denied his motion, and although he expressed some reservations as to his counsel's performance, Rukavina affirmed his desire for the attorney to remain on the case. Rukavina did not move for the trial judge to recuse himself.

Here again, Rukavina must show prejudice to the outcome of the trial as to the dispositive issue of payment. However, Rukavina's credibility was irrelevant in the determination that Barney received the $7,500 payment in his behalf because he did not testify on that issue. Moreover, the trial judge was present at the hearing where counsel retracted his concern regarding perjury. Therefore, any danger of prejudice arising from the motion was neutralized by the hearing, and Rukavina has not shown that he was damaged by his counsel's motion to withdraw.

Finally, if Rukavina was genuinely concerned about the possibility of prejudice, he was free to file an affidavit of bias or prejudice in advance of the trial as would have been proper under rule 63(b), Utah Rules of Civil Procedure. We are in accord with the Utah Court of Appeals that "[w]e will not, therefore, consider the issue of judicial bias or prejudice when it is raised, as in the present case, for the first time on appeal." *Wade v. Stangl,* 869 P.2d 9, 11 (Utah.Ct.App. 1994).

We hold that the evidence supports the finding that Rukavina received the benefit of his lawful bargain and that he has failed to demonstrate that he was prejudiced by the actions of his counsel or of the trial court. We therefore affirm the trial court's dismiss-

al of all causes of action and its denial of a new trial.

ZIMMERMAN, C.J., and DURHAM, RUSSON and McIFF, JJ., concur in Justice HOWE's opinion.

Having disqualified himself, STEWART, Associate C.J., does not participate herein; K.L. McIFF, District Judge, sat.